VILLANTI, Judge.
Kenneth Ray Young appeals the four concurrent thirty-year sentences imposed *932 when he was resentenced pursuant to Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). We reject without comment Young’s argument concerning an alleged error in failing to use a single scoresheet when sentencing him for multiple offenses. However, Young also argues that the trial court violated the requirements of Graham when it failed to consider Young’s rehabilitation and new-found maturity in determining what sentence to impose at the resentencing hearing. Because Young’s interpretation of Graham does not comport with the plain language of that decision, we affirm on this issue as well.
Young was fourteen and fifteen years old when he committed a series of four armed robberies in 2000. He was originally sentenced to concurrent sentences of life without the possibility of parole for each conviction. After the Supreme Court released its opinion in Graham, which held that sentences of life without the possibility of parole were unconstitutional for juveniles who do not commit homicides,[1] Young filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). The postconviction court found that Young’s sentence was unconstitutional under Graham, and it granted the rule 3.800(a) motion and scheduled a re-sentencing hearing.
At that resentencing hearing, Young argued that Graham required the resentenc-ing court to provide Young with a “meaningful opportunity to obtain release ... based on demonstrated maturity and rehabilitation.” Young argued that because Florida abolished its parole system in 1983, that “meaningful opportunity” had to occur at the resentencing hearing. Young then presented evidence that he contended demonstrated that he had been successfully rehabilitated during the eleven years he had already spent in prison. In turn, the State presented evidence concerning the nature of the crimes Young had committed and the continuing effects of those crimes on the victims. After considering this evidence, the resentencing court found that while Young had shown evidence of rehabilitation, he nevertheless needed to be punished for the crimes he committed and that “eleven years [was] not enough” based on the nature and number of the crimes. Thus, while the resentencing court recognized Young’s efforts at rehabilitation, it sentenced Young to the sentence it deemed appropriate based on the totality of the circumstances surrounding his offenses,[2] i.e., concurrent terms of thir *933 ty years in prison followed by ten years’ probation.[3]
In this appeal, Young does not contend that the length of his current sentence is illegal pursuant to Graham. Instead, Young contends that Graham required the resentencing court to use the resentencing hearing as the procedural mechanism through which he would have a “meaningful opportunity” to obtain his release based on demonstrated maturity and rehabilitation and that the resentenc-ing court’s failure to consider Young’s efforts at rehabilitation requires this court to reverse and remand for resentencing. We reject this argument for two reasons.
First, we disagree with Young’s interpretation of Graham as requiring the re-sentencing court to consider Young’s new-found maturity and rehabilitation at the resentencing hearing. Graham addressed the narrow issue of whether a sentence of life without the possibility of parole imposed on a juvenile nonhomicide offender violated the Eighth Amendment’s prohibition on cruel and unusual punishment. 130 S.Ct. at 2017-18. The Court analyzed the issue as one of whether such a sentence is categorically “disproportionate to the crime.” Id. at 2021. After a thorough review of national consensus, penological theory, and the psychological differences between juveniles and adults, the Court held that “the Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide.” Id. at 2034.
Notably, however, Graham did not prohibit all life sentences for juvenile nonho-micide offenders. Id. at 2030 (providing that “[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime” and that the Eighth Amendment “does not require the State to release that offender during his natural life”). Instead, Graham held only that if a sentencing court “imposes a sentence of life [on a juvenile nonhomicide offender] it must provide him or her with some realistic opportunity to obtain release before the end of that term.” Id. at 2034 (emphasis added). And if a life sentence is imposed, the opportunity for release must be based on considerations of the juvenile’s demonstrated maturity and rehabilitation. Id. at 2030. Thus, to comply with the Eighth Amendment’s proportionality requirements, a court may not sentence a juvenile nonhomicide offender to life and conclude at the outset that the offender is incorrigible and incapable of rehabilitation. Id. at 2033. Instead, if the court elects to impose a life sentence, it must provide the juvenile nonhomicide offender with a “chance to later demonstrate that he is fit to rejoin society” based on rehabilitation and newfound maturity. Id.
As is evident from the above, Graham did not alter Florida’s Criminal Punishment Code to the extent that it sets forth the requirements for calculating the lowest permissible prison sentence to which a juvenile nonhomicide offender is' exposed. Graham did not add “maturity and rehabilitation” as grounds for a downward departure sentence under Florida’s sentencing statutes. And Graham did not provide a juvenile nonhomicide offender with the right to a de facto clemency hearing in place of a resentencing hearing. In point of fact, Graham says nothing about the conduct of resentencing hearings. Instead, Graham simply prohibits a court from imposing the specific sentence of life *934 on a juvenile nonhomicide offender unless the court also provides “some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.” Id. at 2030.
Because Young was originally given a sentence of life without the possibility of parole, Graham required that Young be resentenced. The resentencing court did so, and it imposed a sentence of thirty years in prison followed by ten years’ probation. Nothing about this sentence offends Graham, and Graham required nothing more from the resentencing court under the facts of this case.
The thrust of Young’s argument in his brief and at oral argument is that Graham requires the court to provide a juvenile nonhomicide offender with a “meaningful opportunity” to be released from any sentence before its natural expiration, regardless of the length of that sentence, based on the defendant’s maturity and rehabilitation. This is simply incorrect. Graham holds only that a court may not sentence a juvenile nonhomicide offender to life in prison without providing a meaningful opportunity for release — not that a juvenile nonhomicide offender sentenced to a term of years must be provided with a meaningful opportunity for release at some point during that term of years. Here, Young was resentenced to a term of thirty years in prison, following which he will be released. Young has a sentence that specifically provides for his eventual release, and he is not entitled under Graham to an additional opportunity for release.[4]
Young also suggests that his guaranteed release after thirty years is not sufficient to comply with Graham because that release will not be based on his “demonstrated maturity and rehabilitation.” Again, Young misreads Graham. Graham requires that juvenile nonhomicide offenders who are sentenced to life be provided with “some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.” Id. Juvenile nonhomi-cide offenders who are given sentences— even lengthy ones — which provide for their release during their anticipated lifetimes do not need such an opportunity since their eventual release is a foregone conclusion.
Moreover, contrary to Young’s argument in his brief and at oral argument, Graham does not require a resentencing court to use a juvenile nonhomicide offender’s resentencing hearing as the “meaningful opportunity” to seek release based upon rehabilitation and maturity. Instead, the Court in Graham made a deliberate decision to permit each state to develop its own procedures for determining how, when, and with what degree of frequency any review of a juvenile nonhomicide offender’s life sentence must occur. Id. at 2030 (noting that “[i]t is for the State, in the first instance, to explore the means and mechanisms for compliance” with the requirement of providing the meaningful opportunity to obtain release). Thus, states may choose to provide this opportunity through parole hearings, early release, conditional release, “bonus” gain time, or other statutory methods yet to be devised. In Florida, these procedures appear to be a work in progress. However, since Young was not resentenced to a life sentence, we need not address the proper mechanism for providing the opportunity required by Graham. Instead we note only that Graham does not require that a resentencing hearing be the mechanism for this opportunity.
*935 In short, the resentencing court complied with the requirements of Graham when it granted Young’s rule 3.800(a) motion and resentenced him to a sentence other than life without the possibility of parole. Had the resentencing court again imposed a life sentence, it would have been required by Graham to devise some means of providing Young with a subsequent opportunity to seek release from that life sentence based on his demonstrated maturity and rehabilitation. However, once the resentencing court imposed a nonlife sentence on Young, its obligations under Graham were fulfilled, and Young is not entitled to further relief under Graham.
Second, even if we agreed with Young that Graham required the resen-tencing court to use the resentencing hearing as an opportunity for Young to gain release based on maturity and rehabilitation, the record shows that the resentenc-ing court did so. The record plainly shows that the resentencing court took evidence on and considered in detail the nature of Young’s offenses, the manner in which they were committed, Young’s youthfulness at the time of the offenses, Young’s statements about his culpability at the time of his arrest, Young’s behavior during his trials, the Criminal Punishment Code scoresheets applicable to Young’s convictions, the evidence presented concerning Young’s behavior and rehabilitation during his time in prison, the statutory bases for a downward departure sentence, and the arguments of the parties as to an appropriate sentence. After considering all of this evidence and information, the resentencing court determined that thirty years in prison followed by ten years’ probation was the appropriate sentence. This term of years does not offend the Eighth Amendment. Id. at 2058 (Alito, J., dissenting) (noting that Graham’s attorney “conceded at oral argument that a sentence of as much as 40 years without the possibility of parole ‘probably’ would be constitutional”); see also Walle v. State, 99 So.3d 967, 972-73 (Fla. 2d DCA 2012) (holding that a sentence of sixty-five years imposed on a juvenile nonhomicide offender, which sentence was to run consecutively to a twenty-seven-year sentence for offenses committed in a different county, did not violate the Eighth Amendment as discussed in Graham).
Moreover, the fact that the resentencing court did not give the weight to Young’s rehabilitative efforts that he thought the court should have does not mean that the court failed to consider that evidence in reaching its sentencing decision. In fact, the record belies this assertion. The re-sentencing court could have resentenced Young to a life sentence and devised some means of providing him with an opportunity for later release, but it elected not to do so. The resentencing court could have accepted the State’s request for a forty-year sentence followed by ten years’ probation, but it elected not to do so. Thus, the fact that the resentencing court rejected Young’s request to be released, having served only eleven years in prison for committing four armed robberies during which Young held a gun to the heads of some of the victims, does not show that the court ignored the evidence of Young’s newfound maturity and rehabilitation. Instead, the record demonstrates that the resentencing court considered all of the evidence before it, including the evidence of rehabilitation and maturity, in reaching its sentencing decision. We will neither second-guess the resentencing court’s decision nor delve into the thought processes behind the imposition of Young’s sentence. See Nusspickel v. State, 966 So.2d 441, 444 (Fla. 2d DCA 2007) (noting that “the trial court’s imposition of a sentence that is within the minimum and maximum limits set by the legislature ‘is a matter for the trial [cjourt in the exercise of its discretion, which cannot be inquired into upon the appellate level’ ” *936 (quoting Shellman v. State, 222 So.2d 789, 790 (Fla. 2d DCA 1969))). Instead, finding no abuse of discretion in the imposition of this sentence, we affirm.
Affirmed.
NORTHCUTT and KHOUZAM, JJ„ Concur.

. The Supreme Court again took up the issue of sentences of life without the possibility of parole for juvenile offenders in Miller v. Alabama, - U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). In that case, the Supreme Court held that state sentencing statutes that make a sentence of life without the possibility of parole mandatory for juvenile homicide offenders violate the Eighth Amendment's prohibition on cruel and unusual punishment. Id. at 2460. The Court explained that there is a clear distinction between the holdings of Graham and Miller. “Graham established one rule (a flat ban) [on life-without-parole sentences] for nonhomicide offenses, while we set out a different one (individualized sentencing) for homicide offenses.” Id. at 2466 n. 6. In this case, Young relied on certain language from Miller in both his brief and at oral argument to argue that the trial court erred in resentencing him. However, Young is not a homicide offender, and he is not incarcerated under a sentence of life without parole. Therefore, the Miller decision is wholly inapplicable to either the issues or the decision in this case.

. The original trial judge had retired before the resentencing hearing and thus was unavailable to resentence Young. The record shows that the judge who presided over the resentencing hearing had read the transcripts of all four of Young's trials as well as the presentence investigation report that was prepared before Young was originally sentenced. Thus, the resentencing court was completely *933 familiar with all of the evidence presented both at those trials and at Young’s original sentencing hearings.

. Two of these sentences were subject to ten-year minimum mandatory terms, but the application of these minimum mandatory terms is moot as Young has already completed them.

. Certainly, Young retains the opportunity to seek early release from his sentence through executive clemency. Any other opportunities for release must come from the legislative branch — not from the judicial branch or Graham.