# Supreme Court of Florida

_____

No. SC12-578
_____

**LEIGHDON HENRY,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[March 19, 2015]

PERRY, J.

We have for review the Fifth District Court of Appeal's decision in Henry v. State, 82 So. 3d 1084 (Fla. 5th DCA 2012), holding that Graham v. Florida, 560 U.S. 48 (2010), does not apply to term-of-years prison sentences because such sentences do not constitute life imprisonment. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. Because we find that Graham does apply and that the sentence at issue will not provide a meaningful opportunity for release, we quash the decision below and remand for resentencing consistent with our rationale provided below.

## BACKGROUND AND PROCEDURAL HISTORY

When he was seventeen years old, Leighdon Henry was tried as an adult and convicted for committing multiple nonhomicide offenses, including three counts of sexual battery while possessing a weapon, two counts of robbery, one count of kidnapping, one count of carjacking, one count of burglary of a dwelling, and one count of possession of marijuana. The trial court sentenced Henry to life for the sexual battery offenses, plus an additional sixty years' imprisonment for the remaining offenses, to run consecutively. Henry was thus sentenced to life plus sixty years' imprisonment. Henry appealed.

During the pendency of Henry's appeal, the United States Supreme Court issued its Graham decision. Thereafter, Henry filed a motion pursuant to Florida Rule of Criminal Procedure 3.800(b)(2) predicated on the Graham holding. The trial court granted the rule 3.800(b)(2) motion, in part, and resentenced Henry to concurrent thirty-year sentences for the sexual batteries; the remaining sentences were to run consecutively. Henry was thus sentenced to ninety years' imprisonment. The Fifth District affirmed Henry's convictions and revised sentences, concluding that "Henry's aggregate term-of-years sentence is not invalid under the Eighth Amendment . . . ." Henry, 82 So. 3d at 1089.

## ANALYSIS

### Standard of Review

The review of a decision of a district court of appeal construing a provision of the state or federal constitution concerns a pure question of law that is subject to de novo review. Crist v. Fla. Ass'n of Criminal Def. Lawyers, Inc., 978 So. 2d 134, 139 (Fla. 2008) (citing Fla. Dep't of Revenue v. City of Gainesville, 918 So. 2d 250, 256 (Fla. 2005); Zingale v. Powell, 885 So. 2d 277, 280 (Fla. 2004)).

### Merits

In Graham, the Supreme Court conducted a thorough examination of the constitutional requirements for states that subject juvenile nonhomicide offenders to terms of life imprisonment as if these offenders had been adults when they committed their offenses. After careful consideration of the overall issue, the Graham Court concluded and repeatedly emphasized that because of their immaturity and underdeveloped sense of responsibility, juveniles are more vulnerable or negatively influenced by external forces than are adults. Graham, 560 U.S. at 67-68 (citing Roper v. Simmons, 543 U.S. 551 (2005)). The Supreme Court further determined that juveniles constitute a category of offenders that are not as capable of engaging in conduct that is as "morally reprehensible" as adults and, therefore, cannot be reliably "classified among the worst offenders." Id. at 68 (quoting Roper, 543 U.S. at 569; Thompson v. Oklahoma, 487 U.S. 815, 835

(1988) (plurality opinion)).  In addition, the Supreme Court held that juveniles possess a greater potential for change or positive character growth than adults.  Id. (citing Roper, 543 U.S. at 570).

Building upon its prior precedent that explicitly emphasized the special status of juvenile offenders for purposes of criminal punishment, in Miller v. Alabama, 132 S. Ct. 2455 (2012), the Supreme Court stated in no uncertain terms that it is the offenders' juvenile status that implicates the Eighth Amendment to the United States Constitution.  Miller, 132 S. Ct. at 2464 ("To start with the first set of cases: Roper and Graham establish that children are constitutionally different from adults for purposes of sentencing.  Because juveniles have diminished culpability and greater prospects for reform, we explained, 'they are less deserving of the most severe punishments.' " (quoting Graham, 560 U.S. at 68)); Id. at 2465 ("Most fundamentally, Graham insists that youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole.  In the circumstances there, juvenile status precluded a life-without-parole sentence, even though an adult could receive it for a similar crime."); Id. at 2469 ("By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment. . . .  But given all we have said in Roper, Graham, and this decision about children's diminished culpability and heightened capacity for change, we

think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon."); Id. at 2466 ("But the mandatory penalty schemes at issue here prevent the sentencer from taking account of these central considerations. . . . That contravenes Graham's (and also Roper's) foundational principle: that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children.").

The Court concluded that the status of juvenile offenders warrants different considerations by the states whenever such offenders face criminal punishment as if they are adults. See, e.g., Roper, 543 U.S. at 553 ("Three general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders. Juveniles' susceptibility to immature and irresponsible behavior means 'their irresponsible conduct is not as morally reprehensible as that of an adult.' [Thompson, 487 U.S. at 835]. Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment. See [Stanford v. Kentucky, 492 U.S. 361, 395 (1989) (Brenan, J., dissenting), abrogated by Roper, 543 U.S. at 551]. The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character. The Thompson plurality

recognized the import of these characteristics with respect to juveniles under 16. 487 U.S. at 833-38. The same reasoning applies to all juvenile offenders under 18. Once juveniles' diminished culpability is recognized, it is evident that neither of the two penological justifications for the death penalty—retribution and deterrence of capital crimes by prospective offenders, e.g., [Atkins v. Virginia, 536 U.S. 304, 319 (2002)]—provides adequate justification for imposing that penalty on juveniles."); Id. at 561 ("[T]he Thompson plurality stressed that '[t]he reasons why juveniles are not trusted with the privileges and responsibilities of an adult also explain why their irresponsible conduct is not as morally reprehensible as that of an adult.' Thompson, 487 U.S. at 835.").

Emphasizing the distinction between juveniles and adults, the Court explained:

> Roper established that because juveniles have lessened culpability they are less deserving of the most severe punishments. 543 U.S. at 569. As compared to adults, juveniles have a " 'lack of maturity and an underdeveloped sense of responsibility' "; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and their characters are "not as well formed." Id. at 569-570. These salient characteristics mean that "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Id. at 573. Accordingly, "juvenile offenders cannot with reliability be classified among the worst offenders." Id. at 569. A juvenile is not absolved of responsibility for his actions, but his transgression "is not as morally reprehensible as that of an adult." Thompson, [487 U.S.] at 835 (plurality opinion).

- 6 -

Graham, 560 U.S. at 68.  Then, the Court stated that compared to the sentence of death, a sentence of life without parole is "the second most severe penalty permitted by law."  Id. at 69 (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)).  Therefore, the Supreme Court emphasized that the status of the juvenile nonhomicide offender and the nature of the offense committed must be considered when determining whether life in prison without parole is a constitutionally permissible punishment. Id.

In evaluating the relative harshness of life-without-parole sentences for juveniles, the Supreme Court analyzed the cognizable penological justifications for such prison sentences employed by the states and found that only a theory of rehabilitation—which forms the basis for parole systems—is a valid constitutional basis for sentencing juvenile nonhomicide offenders.  Id. at 70-74.  Therefore, the Supreme Court held that the Eighth Amendment prohibits the states from sentencing juvenile nonhomicide offenders to terms of imprisonment in which the states pre-establish that these offenders "never will be fit to reenter society."  Id. at 75.  Further, the Supreme Court acknowledged that "[c]ategorical rules tend to be imperfect, but one is necessary here."  Id.  Consequently, it held that Florida law, which permits juvenile nonhomicide offenders to be sentenced to life-without-parole terms of imprisonment, violates the Eighth Amendment.  Id. at 76.

In so doing, the Supreme Court intended to ensure that the states would provide all juvenile nonhomicide offenders who were sentenced to life terms of imprisonment with meaningful future opportunities to demonstrate their maturity and rehabilitation. Id. at 79 (noting that the "categorical rule gives all juvenile nonhomicide offenders a chance to demonstrate maturity and reform."). Therefore, the Supreme Court reversed our First District's decision in Graham v. State, 982 So. 2d 43 (Fla. 1st DCA 2008), and remanded Graham's case "for further proceedings not inconsistent with [its] opinion." Id. at 82.

In the time since the Supreme Court issued its opinion in Graham, our district courts of appeal have not agreed on how to decide if lengthy term-of-years sentences of juvenile nonhomicide offenders should be evaluated for whether such sentences violate Graham. Our Second, Fourth, and Fifth District Courts of Appeal have applied Graham literally and determined that the holding in Graham should not be applied to aggregate term-of-years prison sentences for juvenile nonhomicide offenders. See, e.g., Young v. State, 110 So. 3d 931, 932-33, 936 (Fla. 2d DCA 2013) (affirming concurrent thirty-year prison sentences for which ten years of probation followed); Guzman v. State, 110 So. 3d 480, 483 (Fla. 4th DCA 2013) (affirming a sixty-year prison sentence for violation of probation); Henry, 82 So. 3d at 1089 (affirming aggregate prison sentences totaling ninety years). Notably, our First and Third District Courts of Appeal have applied

Graham on a case-by-case basis when addressing the sentences of juvenile nonhomicide offenders. Compare Thomas v. State, 78 So. 3d 644 (Fla. 1st DCA 2011) (affirming concurrent fifty-year sentences); Reynolds v. State, 116 So. 3d 558 (Fla. 3d DCA 2013) (affirming concurrent prison sentences of fifty and thirty years, respectively); with Floyd v. State, 87 So. 3d 45 (Fla. 1st DCA 2012) (reversing consecutive forty-year sentences because there was no meaningful opportunity for release required under Graham); Adams v. State, 37 Fla. L. Weekly D1865 (Fla. 3d DCA Aug. 8, 2012) (reversing a sentence that required a juvenile nonhomicide offender to serve at least fifty-eight and one-half years because the sentence exceeded the offender's life expectancy).

In response, we hold that the constitutional prohibition against cruel and unusual punishment under Graham is implicated when a juvenile nonhomicide offender's sentence does not afford any "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Graham, 560 U.S. at 75. Graham requires a juvenile nonhomicide offender, such as Henry, to be afforded such an opportunity during his or her natural life. Id. Because Henry's aggregate sentence, which totals ninety years and requires him to be imprisoned until he is at least nearly ninety-five years old, does not afford him this opportunity, that sentence is unconstitutional under Graham.

We conclude that Graham prohibits the state trial courts from sentencing juvenile nonhomicide offenders to prison terms that ensure these offenders will be imprisoned without obtaining a meaningful opportunity to obtain future early release during their natural lives based on their demonstrated maturity and rehabilitation.

In light of the United States Supreme Court's long-held and consistent view that juveniles are different—with respect to prison sentences that are lawfully imposable on adults convicted for the same criminal offenses—we conclude that, when tried as an adult, the specific sentence that a juvenile nonhomicide offender receives for committing a given offense is not dispositive as to whether the prohibition against cruel and unusual punishment is implicated. Thus, we believe that the Graham Court had no intention of limiting its new categorical rule to sentences denominated under the exclusive term of "life in prison." Instead, we have determined that Graham applies to ensure that juvenile nonhomicide offenders will not be sentenced to terms of imprisonment without affording them a meaningful opportunity for early release based on a demonstration of maturity and rehabilitation. See Graham, 560 U.S. at 75.

In light of Graham, and other Supreme Court precedent, we conclude that the Eighth Amendment will not tolerate prison sentences that lack a review mechanism for evaluating this special class of offenders for demonstrable maturity

and reform in the future because any term of imprisonment for a juvenile is qualitatively different than a comparable period of incarceration is for an adult. See id. at 70-71 ("Under this sentence a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender. . . . This reality cannot be ignored."); Roper, 543 U.S. at 553 ("Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment." (citing Stanford, 492 U.S. at 395)).

Because we have determined that Henry's sentence is unconstitutional under Graham, we conclude that Henry should be resentenced in light of the new juvenile sentencing legislation enacted by the Florida Legislature in 2014, ch. 2014-220, Laws of Fla. See Horsley v. State, No. SC13-1938, slip op. at 3.

## CONCLUSION

For the reasons that we set forth above, we hereby quash the Fifth District's decision. Furthermore, we remand Henry's case to his sentencing court in order to address its present sentencing order in accordance with this opinion.

It is so ordered.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, and POLSTON, JJ., concur.

Application for Review of the Decision of the District Court of Appeal – Constitutional Construction

Fifth District - Case No. 5D08-3779 & 5D10-3021

(Orange County)

Peter D. Webster of Carlton Fields, P.A., Tallahassee, Florida; and David L. Luck, and Christopher Bryan Corts of Carlton Fields, P.A., Miami, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Kellie Anne Nielan, Assistant Attorney General, and Wesley Harold Heidt, Assistant Attorney General, Daytona Beach, Florida,

for Respondent

Bryan Scott Gowdy of Creed & Gowdy, P.A., Jacksonville, Florida,

for Amicus Curiae Florida Association of Criminal Defense Lawyers

Marsha L. Levick, Juvenile Law Center, Philadelphia, Pennsylvania; and George E. Schulz, Jr., of Holland & Knight, Jacksonville, Florida,

for Amicus Curiae Juvenile Law Center

Angela Coin Vigil of Baker & McKenzie LLP, Miami, Florida,

for Amici Curiae Former Members of Judiciary, Former Prosecutors and Bar Leaders