BENTON, J.,
dissenting.
I respectfully dissent on the merits of the' appeal. Under controlling precedent, the appellant is entitled to be “resentenced in light of the new juvenile sentencing legislation enacted by the Florida Legislature in 2014, ch. 2014-220, Laws of Fla.” Henry v. State, 175 So.3d 675, 680 (Fla.2015), reh’g denied, No. SC12-578 (Fla. Sept. 24, 2015). I concur in certifying the question posed in the majority opinion.
The appellant was sentenced in 2010 to life in prison without parole for nonhomi-cide offenses he committed as a juvenile in 2002. These sentences violated the prohibition later handed down in Graham v. Florida, 560 U.S. 48, 82, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), against “the imposition of a life without parole sentence on a juvenile' offender who did not commit homicide.” After the original sentences were vacated, appellant was resentenced in 2014 to concurrent 45-year sentences. The resentencing that took place in the wake of Graham, while not the equivalent of life in prison, did not conform to the new juvenile sentencing legislation.[5]
The appellant now seeks either resen-tencing under section 921.1402, Florida Statutes (2014), or judicial abolition of pa *445 role ineligibility. He maintains we “should invalidate either the statutory provisions that prohibit parole and require offenders to serve 85 percent of their sentences, or the provision in the new sentence review law for juveniles making review available only for offenses committed on or after July 1, 2014.” Under Henry, he is entitled to resentencing under section 921.1402, Florida Statutes, enacted last year, ch. 2014-220, Laws of Fla., § 3, but not to the invalidation of the statutory provisions he seeks in the alternative.
We did not originally “read Henry or Gridine[ v. State, 175 So.3d 672 (Fla.2015),] to require that all juveniles convicted of nonhomicide crimes must be given an opportunity for early release by parole or its equivalent from their term-of-years sentences. Rather, we read those cases to simply hold that juvenile offenders convicted of nonhomicide crimes cannot be sentenced to an individual or aggregate term-of-years sentence that amounts to a de facto life sentence that does not afford the offender a meaningful opportunity for release during his or her natural life.” Lambert v. State, 170 So.3d 74, 76 (Fla. 1st DCA 2015).
But it is now clear that so-called Graham cases are to be treated just like cases revisited under Miller v. Alabama, — U.S.-, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and that an initial resentencing that, even though not a life sentence (or the equivalent) itself, does not conform to the requirements of Henry and section 921.1402 must be set aside and reimposed “in- light of the new juvenile sentencing legislation.” Henry, 175 So.3d at 680; see Thomas v. State, 40 Fla. L. Weekly S479, S479, 2015 WL 5178605 (Fla. Sept. 4, 2015) (requiring a second resentencing “in conformance with the framework established in chapter 2014-220, Laws of Florida”).
In Horsley v. State, 160 So.3d 393, 405 (Fla.2015), the Florida Supreme Court had to fashion appropriate relief for “juvenile offenders whose sentences are unconstitutional under Miller.” See Miller, 132 S.Ct. at 2469 (holding “the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders”). In the aftermath of Miller, the trial court had resentenced Horsley to life without parole, albeit after individualized consideration. Horsley, 160 So.3d at 396-97. On direct review of his resentencing, our supreme court concluded that chapter 2014-220, Laws of Florida, (now codified as sections 775.082, 921.1401, and 921.1402 of the Florida Statutes) should be applied to Horsley (and “all juvenile offenders whose sentences are unconstitutional under Mille-d’) even though Horsley’s offense was committed prior to the effective date of the new juvenile sentencing legislation. Id. at 405, 408 (saying “the Legislature has now provided that all juvenile offenders must receive individualized consideration before the imposition of a life sentence and that most juvenile offenders are eligible for a subsequent judicial review of their sentences”).
On the same day Horsley was decided, our supreme court held that the new juvenile sentencing legislation also applies to nonhomicide offenders whose sentences are unconstitutional under Graham. See Henry, 175 So.3d at 680 (citing Horsley)-, see also Gridine, 175 So.3d at 675 (remanding “to the sentencing court to conduct proceedings in accordance with Henry” where juvenile nonhomicide offender originally received a seventy-year prison sentence). Henry was a juvenile who had been convicted of multiple nonhomicide offenses for which he was originally sentenced to life plus sixty years’ imprisonment. Henry, 175 So.3d at 676. He was resentenced in the wake of Graham, and *446 received an aggregate sentence of ninety years’ imprisonment.. Id.
The Florida Supreme Court ruled that Henry’s ninety-year sentence was unconstitutional under Graham, not because the resentencing' was a life sentence equivalent, but because it did not “afford any ‘meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation’ ” during his natural life. Id. at 679 (quoting Graham, 560 U.S. at 75, 130 S.Ct. 2011). The Henry court stated:
We conclude that Graham prohibits the state trial courts from sentencing juvenile nonhomicide offenders to prison terms that ensure these offenders will be imprisoned without obtaining a meaningful opportunity to obtain future early release during their natural lives based on their demonstrated maturity and rehabilitation.
In light of the United States Supreme Court’s long-held and consistent view that juveniles are different — with respect to prison sentences that are lawfully imposable on adults convicted for the same criminal offenses — we conclude that, when tided as an adult, the specific sentence that a juvenile nonhomicide offender receives for committing a given offense is not dispositive as to whether the prohibition against cruel and unusual punishment is implicated. Thus, we believe that the Graham Court had no intention of limiting its new categorical rule to sentences denominated under the exclusive term of “life in prison.” Instead, we have determined that Graham applies to ensure that juvenile nonhomi-cide offenders will not be sentenced to terms of imprisonment uñthout affording them a meaningful opportunity for early release based on a demonstration of maturity and rehabilitation. See Graham, 560 U.S. at 75, 130 S.Ct. 2011.
In light of Graham, and other Supreme Court precedent, we conclude that the Eighth Amendment will not ■ tolerate prison sentences that lack a review mechanism for evaluating this special class of offenders for demonstrable maturity and reform in the future because any term of impñsonment for a juvenile is qualitatively different than a comparable period of incarceration is for an adult. See id. at 70-71, 130 S.Ct. 2011....
Id. (emphasis added).. Just as in the present case, Henry’s original sentence did not comply with the dictates of Graham. Just as the supreme court ordered Henry to be resentenced under chapter 2014-220, Laws of Florida, id., an intervening resentencing notwithstanding, we should order resen-tencing in the present case under section 921.1402(2)(d) (as the same provision is now codified). The supreme court’s decision in Thomas makes clear that the length of Henry’s initial resentencing is not controlling.
As the majority and concurring opinions note, the Florida Supreme Court recently quashed our decision in Thomas v. State, 135 So.3d 590 (Fla. 1st DCA 2014), and remanded for a second resentencing “in conformance with the framework established in chapter 2014-220, Laws of Florida.” Thomas, 40 Fla. L. Weekly at S479. This was despite the fact that Thomas, who was a juvenile convicted of first-degree . murder and initially sentenced to mandatory life without parole, had already been resentenced in the wake of Miller to concurrent thirty- and forty-year sentences. See Thomas, 135 So.3d at 590. Our supreme court ruled that Thomas was entitled to be resentenced under the new juvenile sentencing ■ legislation,, even though the sentences he received on resen-tencing were not themselves life sentences or the equivalent. Kelsey’s situation is *447 indistinguishable from Thomas’s in this regard.
The majority opinion makes much of the fact the concurrent forty-five-year sentences Kelsey received for nonhomicide offenses on resentencing are not the life sentences that Graham condemned.[6] Even so, appellant is entitled to a review of his concurrent forty-five-year sentences pursuant to section 921.1402(2)(d), Florida Statutes, which provides:
A juvenile offender sentenced to a term of 20 years or more under. s. 775.082(3)(c) [applicable to a juvenile convicted of an offense that is not under the murder statute but is “a life felony or is punishable by a term of imprisonment for life or by a term of years not exceeding life imprisonment” (or an offense reclassified as such) ] is entitled to a review of his or her sentence after 20 years. If the juvenile offender is not resentenced at the initial review hearing, ‘he or she is eligible for one subsequent review hearing 10 years after the initial review hearing.
See § 775.082(3)(c), Fla. Stat. (2014). In Horsley, our supreme court explained:
[Jjuvenile offenders sentenced to a term of imprisonment of more than twenty years for a nonhomicide offense are entitled to a subsequent judicial review of their sentences. Ch. 2014-220, §§ 1, 3, Laws of Fla. [codified at sections 775.082 and 921.1402, Fla. Stat.] This class of nonhomicide offenders is also eligible for “one subsequent review hearing 10 years after the initial review hearing,” if the juvenile nonhomicide offender is not resentenced at the initial review hearing. Ch. 2014-220, § 3, Laws of Fla. [codified at section 921.1402, Fla. Stat.] This is the only class of juvenile offenders entitled to more than one subsequent sentence review.
160 So.3d at 404-05. Under Henry, Kelsey is entitled to a review of his concurrent forty-five-year sentences ■ after twenty years of incarceration (and to a second review hearing in another ten years should he not be resentenced at the initial hearing). See § 921.1402(2)(d), Fla. Stat;
Accordingly, I would reverse Kelsey’s sentences and remand for resentencing, “in conformance with the-framework established in chapter 2014-220, Laws of Florida,” Thomas, 40 Fla. L. Weekly at S479, while joining the-majority opinion as to the certified 'question.

. In affirming Kelsey’s sentences, the majority opinion cites Abrakata v. State, 168 So.3d 251 (Fla. 1st DCA 2015), and Lambert v. State, 170 So.3d 74 (Fla. 1st DCA 2015), both of which are distinguishable: Neither involved a violation of Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). In Abrakata, the juvenile defendant was convicted of attempted second-degree murder with a firearm (a first-degree felony), and sentenced to twenty-five years in prison with a twenty-five-year mandatory minimum. 168 So.3d at 251, 251 n. 1. On appeal to this court, Abrakata argued he was entitled “to a review of his sentence after 15 .years under section 921.1402(2)(c), Florida Statutes.” Id. at,251. This court rejected Abrakata’s argument, reasoning, "absent a violation of Graham, there is no legal basis to retroactively apply section 921.1402 (or any other provision of the juvenile sentencing legislation enacted in 2014) to the 2011 offense in this case.” Id. at 252. In the present case, Kelsey’s initial sentence was plainly a violation of Graham.
In Lambert, which was briefed before Henry v. State, 175 So.3d 675 (Fla.2015), was decided, me juvenile defendant argued that his fifteen-year sentence for aggravated fleeing or attempting to elude "should be amended to reflect that he [wa]s entitled to parole eligibility pursuant to the reasoning in Graham and Judge Padovano’s concurring opinion in Smith v. State, 93 So.3d 371 (Fla. 1st DCA 2012).” 170 So.3d at 75. This court rejected that-argument, stating: "We do not read Henry or Gridine[ v. State, 175 So.3d 672 (Fla.2015),] to require that all juveniles convicted of nonhomicide crimes must be given an opportunity for early release by parole or its equivalent from their term-of-years sentences.” Id. at 76. We concluded, moreover, Lambert’s fifteen-year sentence afforded him "a meaningful opportunity for release during his natural life,” because it did "not amount to anything close to a de facto life sentence.” Id. Whether Henry applies to sentences for offenses committed before July 1, 2014, that are not resentences required under (Miller v. Alabama, — U.S.-, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), or) Graham is not before us.

. The majority opinion contends that Thomas v. State, 40 Fla. L, Weekly S479, 201S WL 5178605 (Fla. Sept, 4, 2015), is distinguishable from the present case because Thomas is a Miller case "for which no' valid remedy on resentencing was available until the recent legislation.” Ante at 442. Because "Kelsey's crimes were nonhomicides for which a range of lawful punishments was available,” ante at 441, the majority opinion maintains that, in his and other Graham cases, a second resen-tencing is not required unless the first resen- . tencing results in the imposition of a life or de facto life sentence. This overlooks the fact that the Florida Supreme Court rejected such a distinction between Miller and Graham cases in Henry, where it ruled the new juvenile sentencing legislation applied to juvenile nonhomicide offenders, even though “a wide range of valid term of years sentences [wejre available for juvenile[s] whose original sentence[s] were unconstitutional under Graham." Ante"at 442. Under the majority opinion’s view, juvenile homicide offenders would be treated more favorably than juvenile nonhomicide offenders.