DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

ROBERT D. GARNER,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D22-866

_____

September 15, 2023

Appeal from the Circuit Court for Pasco County; Kimberly Campbell, Judge.

Andrea M. Norgard of Norgard, Norgard & Chastang, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Lydon W. Schultz, Assistant Attorney General, Tampa, for Appellee.

SMITH, Judge.

Robert Garner challenges the trial court's order resentencing him to two consecutive life sentences, each with the possibility of parole after twenty-five years, after a jury found him guilty of committing two murders in 1994. Mr. Garner argues that his consecutive life sentences are unconstitutional where he committed the offenses in one criminal episode when he was a juvenile. Because Mr. Garner is entitled to the

possibility of parole after twenty-five years for each of the two homicide offenses, he has been granted a "meaningful opportunity" to be considered for release during his natural life, and thus his sentences do not violate the Eighth Amendment. We affirm.[1]

## I

On March 3, 1994, a jury found Mr. Garner guilty of two counts of first-degree murder. The charges arose from a single criminal episode in which Mr. Garner and two others, one aged nineteen and one a juvenile, participated in the brutal killing of two elderly victims who were neighbors of Mr. Garner and personally known to him.

After his conviction, the trial court sentenced Mr. Garner to two consecutive life sentences, each with a possibility of parole after twenty-five years. Mr. Garner, who was nineteen years old at the time of sentencing, would have been eligible for parole at age forty-four. Mr. Garner appealed those sentences, which this court affirmed on October 9, 1996, in *Garner v. State*, 683 So. 2d 121 (Fla. 2d DCA 1996). Mr. Garner's subsequent postconviction motions were unsuccessful and were denied by the postconviction court.

On June 24, 2016, Mr. Garner filed a Motion for Postconviction Relief 3.850(a), (1), (b) (2) [sic] Alternatively, Motion to Correct Illegal Sentence 3.800(a), arguing that his two consecutive life sentences with the possibility of review after twenty-five years constituted a de facto life sentence and were thus impermissible for a juvenile under *Miller v. Alabama*, 567 U.S. 460 (2012), and *Atwell v. State*, 197 So. 3d 1040 (Fla. 2016), *abrogated by State v. Michel*, 257 So. 3d 3, 6 (Fla. 2018).

---

[1] We also find no merit in the remaining arguments briefed by Mr. Garner.

The State conceded that under *Miller* and its progeny, Mr. Garner was entitled to resentencing pursuant to section 775.082(1)(b)2, Florida Statutes (2016). The court granted Mr. Garner's motion for postconviction relief. But on August 24, 2018, the State filed a Motion to Reconsider Defendant's Motion for Post-Conviction Relief, arguing that because the Florida Supreme Court in *Michel*, 257 So. 3d at 6-7, had recently overturned *Atwell* and held that parole-eligible juvenile defendants are not entitled to resentencing because their sentences are constitutional, Mr. Garner's sentences were permissible. On December 20, 2018, the postconviction court issued an order granting the State's motion to reconsider, vacating its previous order, and denying Mr. Garner's postconviction motion. The court agreed with the State that after *Michel* overturned *Atwell,* Mr. Garner's parole-eligible life sentences were indeed constitutional.

Mr. Garner appealed the December 20, 2018, order to this court. *Garner v. State*, 310 So. 3d 484 (Fla. 2d DCA 2020). We reversed the order and remanded for resentencing, holding that the postconviction court lacked jurisdiction to vacate its previous order based on the State's untimely rehearing motion; we noted, however, that upon remand, the decisional law at the time of resentencing would apply and that "Mr. Garner may still receive the same sentence upon resentencing." *Id.* at 485.

At resentencing, Mr. Garner presented testimony from a number of witnesses including family members and friends, as well as a psychologist who discussed the effects of trauma on a juvenile brain. On March 4, 2022, the court resentenced Mr. Garner to consecutive life sentences, each with the possibility of parole after twenty-five years. This timely appeal followed.

3

## II

In this appeal, Mr. Garner argues that his consecutive life sentences for the two homicides, even with the possibility of parole after twenty-five years, are unconstitutional under our decision in *Mack v. State*, 313 So. 3d 694, 698 (Fla. 2d DCA 2020) (holding that the sexual battery consecutive life sentence, which ran concurrent with the life sentences for first-degree murder and burglary, violated the Eighth Amendment). We review de novo the constitutionality of a sentence. *Williams v. State*, 313 So. 3d 788, 790-91 (Fla. 2d DCA 2021) (reviewing juvenile life sentence with the possibility of parole and determining that sentence "is not illegal under the law as it now stands").

However, before we address *Mack*, a brief discussion of the evolving case law is required.

The United States Supreme Court in *Roper v. Simmons*, 543 U.S. 551, 568 (2005), held that a juvenile receiving a death penalty sentence for any crime violates the Eighth Amendment. In *Graham v. Florida*, 560 U.S. 48, 75 (2010), the Supreme Court would later address Eighth Amendment implications in the context of juvenile <u>nonhomicide</u> offenders receiving life sentences without parole. Graham was sentenced to life in prison without the possibility of parole for an armed burglary committed when he was sixteen. *Id.* at 53-54. The Supreme Court held that the Eighth Amendment categorically forbids a sentence of life without parole for a juvenile <u>nonhomicide</u> offender. *Id.* at 82. And while states are "not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," they must "give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" before the end of the sentence and during the offender's natural life. *Id.* at 75. In considering a

4

sentence of life without parole for juvenile <u>nonhomicide</u> offenders, *Graham* held that "[a] sentence lacking any legitimate penological justification is by its nature disproportionate to the offense." *Id.* at 71.

Importantly, *Graham* drew a marked distinction between nonhomicide offenses and homicide offenses:

> There is a line "between homicide and other serious violent offenses against the individual." *Kennedy* [*v. Louisiana*, 554 U.S. 407, 438 (2008)]. Serious nonhomicide crimes "may be devastating in their harm . . . but 'in terms of moral depravity and of the injury to the person and to the public,' . . . they cannot be compared to murder in their 'severity and irrevocability.' " *Id.* (quoting *Coker* [*v. Georgia*, 433 U.S. 584, 598 (1977)] (plurality opinion)). This is because "[l]ife is over for the victim of the murderer," but for the victim of even a very serious nonhomicide crime, "life . . . is not over and normally is not beyond repair." [*Id.*] (plurality opinion). Although an offense like robbery or rape is "a serious crime deserving serious punishment," *Enmund* [*v. Florida*, 458 U.S. 782, 797 (1982)], those crimes differ from homicide crimes in a moral sense.

*Id.* at 69.

Two years later, the Supreme Court would decide *Miller*, 567 U.S. at 479, focusing in on <u>homicide</u> offenses committed by juveniles. Miller filed a habeas petition arguing a violation of his Eighth Amendment rights after he was convicted of murder and received a mandatory life sentence without the possibility of parole for the murder of a store clerk during a robbery. *Id.* at 466-67. Building upon its reasoning in *Graham,* the Supreme Court held that a sentencing scheme that mandates a juvenile sentence of life without the possibility of parole for all juveniles convicted of <u>homicide</u> violates the Eighth Amendment. *Id.* at 479. *Miller* reasoned that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles," such as age, age-related characteristics, and the nature of

the crimes, because to do otherwise "violate[s] th[e] principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment." *Id.* at 489. Again recognizing the differences between homicide and nonhomicide offenses, it declined to categorically bar such a penalty, as it had done in *Graham*. *Id.* at 479. Instead, it held that a mandatory sentencing scheme where juvenile homicide offenders receive "lifetime incarceration without the possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes," violates the Eighth Amendment's ban on cruel and unusual punishment. *Id.* at 489; *see also Montgomery v. Louisiana*, 577 US. 190, 212 (2016) ("A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them.").

In response to *Graham* and *Miller*, the Florida Legislature adopted chapter 2014-220, Laws of Florida, codified in sections 775.082, 921.1401, and 921.1402, Florida Statutes. *Mack*, 313 So. 3d at 695.

The Florida Supreme Court in *Henry v. State*, 175 So. 3d 675, 676 (Fla. 2015), discussed the implications of *Graham* and *Miller* where a juvenile was convicted of multiple nonhomicide offenses and received an aggregate sentence of ninety years in prison. *Henry* held that "the constitutional prohibition against cruel and unusual punishment under *Graham* is implicated when a juvenile <u>nonhomicide</u> offender's sentence does not afford any 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " *Id.* at 679 (emphasis added) (quoting *Graham*, 560 U.S. at 75). Because Henry would be imprisoned until he was at least ninety-five years old, the Florida Supreme Court held that his aggregate sentence for his <u>nonhomicide</u> offenses afforded him no meaningful opportunity for release and was therefore

unconstitutional under *Graham*. *Id.* at 679-80; *cf. Michel*, 257 So. 3d at 4 (holding that a juvenile sentenced to concurrent life sentences with the possibility of parole after twenty-five years for first-degree premeditated murder and armed robbery was not entitled to resentencing because such sentence does not violate the Eighth Amendment); *Franklin v. State*, 258 So. 3d 1239, 1241 (Fla. 2018) (holding that "Florida's statutory parole process fulfills *Graham*'s requirement that juveniles be given a 'meaningful opportunity' to be considered for release during their natural life" and receding from its decision in *Atwell*, wherein the court had earlier held that a juvenile homicide offender's sentence of life with parole sentence violated the Eighth Amendment where the release date was well beyond the juvenile's life expectancy).

### III

We now turn to our decision in *Mack*. Mr. Mack, a juvenile, was convicted of homicide and nonhomicide crimes and sentenced to concurrent life sentences for murder and burglary, which entitled him to a sentencing review after twenty-five years under sections 921.1402(2)(a) and 775.082(1)(b), Florida Statutes (2018), and to a consecutive life sentence for sexual battery, which entitled Mr. Mack to a sentencing review after twenty years under sections 775.082(3)(c) and 921.1405(2)(d). *Mack*, 313 So. 2d at 695. The issue before us in *Mack* was the "absence of any penological purpose to be served by [Mr.] Mack's consecutive life sentence for sexual battery and that sentence's nullification of [Mr.] Mack's meaningful opportunity to obtain release from incarceration under his murder and burglary sentences" under *Graham* and *Miller*. *Id.* at 698. In reversing the consecutive life sentences as unconstitutional, we held that the opportunity for release for the first life sentence after twenty-five years was not "meaningful" as

required by *Miller* because Mr. Mack would still be required to serve an additional twenty years for the consecutive life sentence for the sexual battery before the next review. *Id.* at 696. In so holding, we reasoned that the consecutive life sentence for sexual battery, arising from the same criminal episode, served no "penological purpose" and that "[a]s a practical matter, its only effect [was] to eliminate any meaningful opportunity for him to gain release from incarceration under the murder <u>and</u> burglary sentences." *Id.* (emphasis added).

The State argues an obvious distinction between *Mack* and the instant case—here Mr. Garner was convicted of multiple <u>homicide</u> offenses with each consecutive sentence carrying a life sentence <u>with</u> the possibility of parole after twenty-five years. Conversely, the issue in *Mack* focused on the penological purpose of a consecutive life sentence for the <u>nonhomicide</u> offense.

## IV

The issue before us is one of first impression for our court.[2] However, our sister court in the Fourth District addressed similar facts and upheld as constitutional consecutive life sentences with the possibility of parole after twenty-five years where the juvenile committed multiple homicides in a single episode. *Hegwood v. State*, 308 So. 3d 647, 648 (Fla. 4th DCA 2020). In *Hegwood*, the juvenile was sentenced to life in prison with a twenty-five-year mandatory minimum for three

---

[2] The United States Supreme Court "has not squarely addressed the issue" before us now—whether the rules announced in *Graham* and *Miller* "should be extended to cases in which a juvenile homicide offender receives consecutive sentences of life imprisonment with the possibility of release" for each of the multiple homicide offenses. *State v. Ali*, 895 N.W. 2d 237, 244 (Minn. 2017). Nor has the Florida Supreme Court squarely addressed the issue presented here.

murders and life in prison with a three-year mandatory minimum for robbery with a firearm. *Id.* The three murder sentences were ordered to run consecutively to the robbery count running consecutively with the first murder count. *Id.* The trial court ordered that the juvenile was not entitled to review until he had served seventy-five years. *Id.* The *Hegwood* court reversed, holding that the trial court erred when it ordered that the juvenile was not entitled to judicial review until after serving seventy-five years but affirmed the three consecutive life sentences for the three murders, holding that the consecutive life sentences were constitutional under *Miller* and *Michel*, where Mr. Hegwood would be provided judicial review after each life sentence. *Id.* at 648-49. As in *Hegwood*, Mr. Garner was sentenced to consecutive life sentences for multiple murders and he will have a meaningful opportunity for release because each of his life sentences provides for the possibility of parole after twenty-five years.

**V**

Trial courts have broad discretion when sentencing a defendant within the statutory limits. *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000); *see also Hoskins v. State*, 965 So. 2d 1, 18 (Fla. 2007) ("Trial courts are in the best position to observe the unique circumstances of a case and have broad discretion in assigning weight to mitigators."). And within those statutory limits, homicide offenses may carry harsher sentences than nonhomicide cases. *Kennedy*, 554 U.S. at 438 (citing *Enmund*, 458 U.S. at 797) (noting that harsher sentences for homicide offenses were justified due to "the fundamental, moral distinction between" homicide and other offenses). A juvenile life sentence with the possibility of parole "is not illegal under the law as it now stands." *Williams*, 313 So. 3d at 790-91. The United States Supreme Court and

9

the Florida Supreme Court have historically treated nonhomicide cases differently than homicide cases. *See Graham*, 560 U.S. at 69; *Miller*, 567 U.S. at 473; *Henry*, 175 So. 3d at 678. Here, Mr. Garner has not provided any legal authority supporting a departure from this long line of authority. Therefore, until such time that the United States Supreme Court or the Florida Supreme Court holds, or the Legislature enacts law, that precludes the imposition of consecutive life sentences—even with the possibility of parole or judicial review after twenty-five years for each sentence—for juvenile homicide offenders who commit multiple murders, we are bound to follow *Graham, Miller, Michel*, and *Franklin.*

Accordingly, because the consecutive life sentence, here, with the possibility of parole after twenty-five years, was for the second homicide, that sentence served a "penological purpose" and did not violate the Eighth Amendment.[3]

Affirmed.

LABRIT, J., Concurs.
SILBERMAN, J., Concurs specially with an opinion in which LABRIT, J., concurs.

---

[3] More than twenty-five years have elapsed since Mr. Garner was first sentenced, and he has not yet moved for judicial review, although we understand from his briefing that he intends to file such motion. This opinion is limited to the issues raised herein, and nothing in this opinion should be construed as to reach the merits of such motion for review or additional filings related thereto.

SILBERMAN, Judge, Specially concurring.

I concur with the majority decision, affirming Mr. Garner's consecutive life sentences with the possibility of parole after twenty-five years as to each count of first-degree murder.[4] The majority has distinguished this court's decision in *Mack v. State*, 313 So. 3d 694, 695 (Fla. 2d DCA 2020), which involved a juvenile who committed multiple crimes in a single criminal episode. There, Mr. Mack was sentenced to concurrent life sentences for a homicide and a burglary and a consecutive life sentence for a sexual battery, a nonhomicide offense. *Id.* Here, Mr. Garner was sentenced to consecutive life terms for two homicides committed in a single criminal episode.

At issue in *Mack* and here is how to deal with a juvenile's consecutive life sentences where each sentence provides for judicial review or the possibility of parole after a specified period of incarceration served on the initial life sentence. *Mack* concludes that consecutive sentences would afford Mr. Mack no meaningful opportunity to be released from incarceration. *Id.* at 696. This court explained that the consecutive life sentence for the sexual battery would render Mr. Mack ineligible to seek release from incarceration even if he were found to be fully rehabilitated and entitled to release on the homicide and burglary sentences. *Id.* Instead, he would be returned to prison to begin serving his life sentence for the sexual battery with judicial review after another twenty years' imprisonment. *Id.* The court concluded that there is no

---

[4] It is worth noting that while each of Mr. Garner's life sentences includes the possibility of parole, in *Jones v. Mississippi*, 141 S. Ct. 1307, 1314 (2021), the Supreme Court reiterated that neither its earlier cases nor the Eighth Amendment prohibits a discretionary sentence of life *without parole* for a juvenile who commits a homicide. *Jones* does not impact the analysis of Mr. Garner's claim.

11

penological purpose for such an outcome and that the sentencing scheme violates the prohibition against cruel and unusual punishment set forth in the Eighth Amendment to the United States Constitution. *Id.* at 696, 698.

The majority concludes that there is a penological purpose to support the consecutive sentences imposed here for two homicides. At this point, I cannot disagree. But if Mr. Garner is eventually granted release on parole on his first sentence, an issue that will need to be resolved is whether there will still be a penological purpose justifying his return to prison to begin serving his second sentence, for which he would not be eligible for release on parole for twenty-five years.

Current law does not clearly resolve this issue when the sentences are for multiple homicides. The Florida Supreme Court has reiterated that an offender's juvenile status implicates the Eighth Amendment and warrants different considerations when the offender faces criminal punishment as if the juvenile were an adult. *Henry v. State*, 175 So. 3d 675, 677 (Fla. 2015) (discussing *Miller v. Alabama*, 567 U.S. 460 (2012)). The court held "that the constitutional prohibition against cruel and unusual punishment under *Graham* is implicated when a juvenile nonhomicide offender's sentence does not afford any 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " *Id.* at 679 (quoting *Graham v. Florida*, 560 U.S. 48, 75 (2010)).

In *Graham*, the Supreme Court noted that "[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on

demonstrated maturity and rehabilitation." 560 U.S. at 75. The Court added that

> while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives.

*Id.*

In a case dealing with the sentencing of a juvenile offender who committed first-degree murder, armed robbery, and armed carjacking, the Florida Supreme Court reviewed Florida's statutory scheme to address whether a trial court is required to review a juvenile's aggregate sentence imposed during the same sentencing proceeding. *State v. Purdy*, 252 So. 3d 723, 725–27 (Fla. 2018). The court held that Florida's juvenile sentencing statutes do "not provide for aggregation of sentences at judicial sentence review." *Id.* at 729. The court emphasized that it was deciding the issue solely under Florida statutory law and was not addressing any challenge to consecutive sentences on Eighth Amendment grounds. *Id.* at 729 n.2. The court also noted that after *Graham*, the United States Supreme Court discussed juvenile homicide offenders and held "that the Eighth Amendment prohibits the imposition of a mandatory life sentence without the possibility of parole for juvenile homicide offenders." *Id.* at 725 (citing *Miller*, 567 U.S. at 479).

In *Miller,* the United States Supreme Court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 U.S. at 479. But the Court did not discuss the issue of consecutive life sentences for juveniles who commit multiple homicides in a single criminal episode and whose sentences provide for the possibility of parole after twenty-five

13

years as to each sentence. The Court again emphasized that "children are constitutionally different from adults for purposes of sentencing" and "have diminished culpability and greater prospects for reform." *Id.* at 471 (citing *Graham,* 560 U.S. at 68); *see also Roper v. Simmons*, 543 U.S. 551, 569–70 (2005). The Court noted that the penological justifications for imposing harsh sentences include retribution, deterrence, incapacitation, and rehabilitation. *Id.* at 472–73. However, the Court reiterated "that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Id.* at 472.

The cases discussed above do not directly answer the issue of whether the sentences imposed here violate the Eighth Amendment. At a minimum, these sentences would require that Mr. Garner serve at least fifty years in prison. Even if he were to be released on parole as to his first life sentence after twenty-five years, he would be returned to prison to begin serving his second life sentence without further parole review until he has served another twenty-five years in prison. Thus, for two homicides committed during a single criminal episode, even if his first parole review determines there is no penological purpose requiring that he remain in prison as to the first life sentence, the same factors that warranted his release as to that sentence would not allow him to leave prison for another twenty-five years.

It is possible that differences in the facts of each homicide committed by Mr. Garner may justify his return to prison to serve twenty-five years before he may be parole eligible as to the second sentence. But it is also possible that the factors supporting his release from the first life sentence may establish that there would be no penological purpose in having Mr. Garner serve the second sentence.

14

As the majority opinion notes, the Fourth District upheld the constitutionality of a juvenile defendant's three consecutive life sentences, with judicial review after twenty-five years as to each sentence, for three homicides committed during a single criminal episode. *See Hegwood v. State*, 308 So. 3d 647, 648–49 (Fla. 4th DCA 2020). In doing so, the Fourth District rejected the trial court's pronouncement that Mr. Hegwood was not entitled to judicial review of his sentence until after seventy-five years, when all of his minimum sentences have been served. *Id.* at 649. The Fourth District discussed the holding in *Miller* that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 648 (quoting *Miller*, 567 U.S. at 479). But the court did not address the Supreme Court's observations regarding juveniles' "diminished culpability and greater prospects for reform" or "the distinctive attributes of youth [that] diminish the penological justifications for imposing the harshest sentences on juvenile offenders." *Miller*, 567 U.S. at 471–72.

Mr. Garner has not yet sought or obtained release to parole from his first life sentence. As previously noted, should he be successful in obtaining release to parole on that sentence, then it appears he will be remanded to custody to begin serving his second sentence. But his release from prison on the first sentence is a contingent future event that may not occur. The Supreme Court has stated that "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580-81 (1985)); *see also Trump v. New York,* 141 S. Ct. 530, 535 (2020) (relying on the ripeness discussion in *Texas v.*

15

*United States* to conclude that an Article III claim was not ripe for review due to "contingencies and speculation that impede judicial review"); *Barnes v. State*, 124 So. 3d 904, 918 (Fla. 2013) (concluding that a claim that a death sentence violates the Eighth Amendment prohibition against cruel and unusual punishment because the defendant may be incompetent at the time of execution is not ripe for review until a death warrant has been issued).

Until Mr. Garner obtains release from his first life sentence, he will not begin serving his second life sentence. Should this occur, he will have the opportunity to raise a claim that returning him to prison to begin his second life sentence serves no penological purpose and violates the Eighth Amendment. At that point, a court will be able to evaluate his claim, which will then include the circumstances surrounding Mr. Garner's release to parole on his first life sentence. *See Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995) (declining to reach an Eighth Amendment challenge and recognizing that such a challenge can be raised in the future when the controversy is ripe).

For these reasons, I concur in the majority decision affirming the trial court's resentencing order.

––––––––––––––––––––––––––

Opinion subject to revision prior to official publication.