IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

FLOYD W. PETERSON,

      Appellant,

 v.                                Case No.  5D15-3799

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed June 10, 2016

3.800 Appeal from the Circuit Court
for Orange County,
Mark S. Blechman, Judge.

Robert Wesley, Public Defender, and
Carolyn Schlemmer, Assistant Public
Defender, Orlando, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Bonnie Jean Parrish,
Assistant Attorney General, Daytona
Beach, for Appellee.

LAMBERT, J.

Floyd Peterson was convicted in 2003 of burglary of a dwelling with an assault or

battery, a first-degree felony, punishable by a term of years not exceeding life in prison,

and was sentenced to serve fifty-six years in prison.[1]  Peterson was seventeen years old

---

[1] Peterson was also convicted of two other crimes which are not pertinent to this
appeal.

at the time he committed this crime and was eighteen years old when he was sentenced.[2]

His direct appeal was affirmed without opinion. *Peterson v. State*, 892 So. 2d 1056 (Fla. 5th DCA 2005).

Presently pending before this court is Peterson's appeal of the postconviction court's denial of his Florida Rule of Criminal Procedure 3.800(a) motion to correct his sentence. Peterson essentially argues that the fifty-six-year sentence for his nonhomicide crime equates to a de facto life sentence in violation of the Eighth Amendment of the United States Constitution's prohibition against cruel and unusual punishment.[3]

In *Graham v. Florida*, 560 U.S. 48, 74 (2010), the United States Supreme Court held that the Eighth Amendment forbids a sentence of life without parole for a juvenile offender who did not commit a homicide. The Court wrote:

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give [juvenile offenders] some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. . . . It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. . . . The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

---

[2] Peterson committed the crime twenty days before he turned eighteen. He was sentenced four days before he turned nineteen.

[3] The Eighth Amendment's cruel and unusual punishment clause is made applicable to the states by the due process clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 675 (1962) (Douglas, J., concurring).

560 U.S. at 75. Two years later, in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), the Court held that a mandatory life sentence without the possibility of parole for juvenile offenders who commit homicides violates the Eighth Amendment.

Subsequent to *Graham*, appellate courts in Florida confronted the question of whether a lengthy term-of-years sentence imposed upon juvenile nonhomicide offenders also violated *Graham* and the Eighth Amendment because these sentences, though not actual life sentences, amounted to de facto life sentences.[4] Three of the five district courts of appeal found that *Graham* did not apply to lengthy term-of-years sentences. *See, e.g., Young v. State*, 110 So. 3d 931, 932–33 (Fla. 2d DCA 2013); *Guzman v. State*, 110 So. 3d 480, 483 (Fla. 4th DCA 2013); *Henry v. State*, 82 So. 3d 1084, 1089 (Fla. 5th DCA 2012). The First District Court of Appeal applied *Graham* on a case-by-case basis when addressing lengthy sentences of juvenile nonhomicide offenders. *See Floyd v. State*, 87 So. 3d 45, 45–46 (Fla. 1st DCA 2012) (reversing consecutive forty-year sentences because there was no meaningful opportunity for release required under *Graham*); *Adams v. State*, 188 So. 3d 849, 851–52 (Fla. 1st DCA 2012) (reversing a sentence that required a juvenile nonhomicide offender to serve at least fifty-eight and one-half years because the sentence exceeded the offender's life expectancy). The Florida Supreme Court accepted jurisdiction in *Henry* to address whether the holding in *Graham* applied to lengthy term-of-years sentences. *Henry v. State*, 107 So. 3d 405 (Fla. 2012).

---

[4] A de facto life sentence is defined as "one that exceeds the defendant's life expectancy." *Adams v. State*, 188 So. 3d 849, 851 (Fla. 1st DCA 2012), *review denied, State v. Adams*, No. SC12-1795, 2016 WL 234892 (Fla. Jan. 20, 2016).

3

While *Henry* was pending before the supreme court, the Florida Legislature, in response to both *Graham* and *Miller*, enacted legislation to bring Florida's juvenile sentencing statutes into compliance with both cases. *See* ch. 2014-220, Laws of Fla., (now codified in §§ 775.082, 921.1401, 921.1402, Fla. Stat. (2014)).[5] These new statutes do not prohibit juvenile offenders from receiving lengthy prison sentences, but they do require that the juvenile receives a review hearing after a designated number of years based on the crime for which the juvenile was convicted to allow the sentencing court the discretion to modify the sentence if the juvenile offender has demonstrated sufficient maturity and reform.

On March 19, 2015, the court issued its opinion in *Henry v. State*, 175 So. 3d 675 (Fla. 2015). The court, in quashing the decision of this court, held that *Graham* does apply to lengthy term-of-years prison sentences. 175 So. 3d at 676. The court determined that "*Graham* prohibits the state trial courts from sentencing juvenile nonhomicide offenders to prison terms that ensure these offenders will be imprisoned without obtaining a meaningful opportunity to obtain future early release during their natural lives based on their demonstrated maturity and rehabilitation." *Id.* at 680. The court emphasized that the "specific sentence that a juvenile nonhomicide offender receives for committing a given offense is not dispositive as to whether the prohibition against cruel and unusual punishment is implicated" and held that the "Eighth Amendment will not tolerate prison sentences that lack a review mechanism for evaluating [juvenile] offenders for demonstrable maturity and reform . . . because any term of imprisonment for a juvenile is qualitatively different than a comparable period of incarceration is for an

---

[5] These statutes became effective as of July 1, 2014.

adult." *Id.* (citing *Graham*, 560 U.S. at 70–71; *Roper v. Simmons*, 543 U.S. 551, 553 (2005)). The court held that Henry's aggregate ninety-year sentence was unconstitutional because it did not afford him a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation, and, citing to *Horsley v. State*, 160 So. 3d 393, 395–96 (Fla. 2015), the court remanded the case for resentencing pursuant to the 2014 juvenile sentencing laws. *Id.*

On the same day *Henry* was issued, the court released *Gridine v. State*, 175 So. 3d 672 (Fla. 2015), in which the court declared that the seventy-year prison sentence imposed on Mr. Gridine, who was also a juvenile nonhomicide offender, was unconstitutional under *Graham* because it failed to provide him with a meaningful opportunity for early release based upon a demonstration of his maturity and rehabilitation. 175 So. 3d at 674–75. The court remanded the case back to the sentencing court to conduct proceedings in accordance with *Henry*. *Id.* at 675.

Subsequent to *Henry* and *Gridine*, Florida's appellate courts have wrestled with the issue of defining the point at which a lengthy term-of-years sentence for a juvenile nonhomicide offender becomes a de facto life sentence and, therefore, invalid under *Graham* and *Henry*. This court held in *Brooks v. State*, 186 So. 3d 564, 567 (Fla. 5th DCA 2015), and the Second District Court of Appeal held in *Morris v. State*, 40 Fla. L. Weekly D1948 (Fla. 2d DCA Aug. 21, 2015), that a sixty-five-year sentence imposed upon such an offender was unconstitutional. Our court had also previously held that a juvenile's sixty-year concurrent sentences were unconstitutional in light of *Henry* because the juvenile was denied judicial review. *Barnes v. State*, 175 So. 3d 380, 381–82 (Fla. 5th DCA 2015). The Second District has recently determined that a fifty-year sentence which,

at most, would result in the juvenile being released from prison at the age of sixty-eight, was not a de facto life sentence in violation of *Graham*, and thus, was constitutional. *Williams v. State*, 41 Fla. L. Weekly D508 (Fla. 2d DCA Feb. 26, 2016). Also, in *Kelsey v. State*, 183 So. 3d 439 (Fla. 1st DCA 2015), the First District Court of Appeal, in a 2-1 per curiam opinion, concluded that it was constrained to affirm the forty-five-year concurrent sentences imposed upon the juvenile nonhomicide offender because the sentences were not de facto life sentences to which *Graham* applies.[6] Most recently, in *Collins v. State*, 41 Fla. L. Weekly D1003 (Fla. 1st DCA Apr. 25, 2016), the First District held that fifty-five-year aggregate sentences for nonhomicide crimes that the defendant committed as a minor did not amount to a de facto life sentence. To date, the Florida Supreme Court has not specifically answered the question of when a lengthy term-of-years sentence becomes a de facto life sentence. *See Guzman v. State*, 183 So. 3d 1025, 1026 (Fla. 2016) (discharging jurisdiction and declining to address the certified

---

[6] The First District certified the following question to the Florida Supreme Court as one of great public importance:

> WHETHER A DEFENDANT WHOSE INITIAL SENTENCE FOR A NONHOMICIDE CRIME VIOLATES *GRAHAM v. FLORIDA*, AND WHO IS RESENTENCED TO CONCURRENT FORTY-FIVE YEAR TERMS, IS ENTITLED TO A NEW RESENTENCING UNDER THE FRAMEWORK ESTABLISHED IN CHAPTER 2014-220, LAWS OF FLORIDA?

*Kelsey*, 183 So. 3d at 442. The supreme court has accepted jurisdiction. *Kelsey v. State*, No. SC15-2079, 2015 WL 7720518 (Fla. Nov. 19, 2015).

question regarding the point at which a term-of-years sentence becomes a de facto life sentence).[7]

However, in *Thomas v. State*, 135 So. 3d 590 (Fla. 1st DCA 2014), the First District Court of Appeal affirmed, after resentencing, a juvenile offender's thirty-year sentence for armed robbery and concurrent forty-year sentence for first-degree murder.  The Florida Supreme Court quashed this decision and remanded for sentencing in conformance with the 2014 juvenile sentencing statutes.  *Thomas v. State*, 177 So. 3d 1275 (Fla. 2015).  Though *Thomas* involved a juvenile who committed a homicide, thereby implicating *Miller* and not *Graham*, as noted by Judge Benton in his dissenting opinion in *Kelsey*, if the constitutionality of a juvenile nonhomicide offender's sentence is based solely on whether the juvenile received a de facto life sentence, then, pursuant to *Thomas*, a juvenile homicide offender whose forty-year sentence is invalid, and therefore entitled to resentencing under the new juvenile sentencing law, is actually treated more favorably than a juvenile nonhomicide offender, such as Mr. Kelsey, whose forty-five-year sentence was affirmed as constitutional.  *See Kelsey*, 183 So. 3d at 447 n.6 (Benton, J., dissenting).

As evidenced by the foregoing, after *Henry* and *Gridine*, the intermediate appellate courts have attempted to narrow the line of demarcation for when a juvenile nonhomicide offender's sentence becomes a de facto life sentence and, therefore, unconstitutional.

---

[7] In her concurring opinion, Justice Pariente explained that discharge was appropriate because, though Guzman committed his offenses while a juvenile, he was initially placed on probation.  *Guzman*, 183 So. 3d at 1026 (Pariente J., concurring). Guzman thereafter violated his probation after he turned eighteen, prompting the trial court to revoke and terminate his probation and sentence him to sixty years in prison.  *Id*. Justice Pariente made clear that the only reason that Guzman's sixty-year sentence would not be otherwise unconstitutional under *Graham* was because Guzman violated his probation and received his sixty-year sentence after he became an adult.  *Id*. at 1027.

From the seventy-year sentence determined to be unconstitutional in *Gridine*, our court has held that a sixty-year sentence is unconstitutional, while a sister court has determined that a fifty-five year sentence is constitutional. Here, we are tasked with deciding whether Peterson's fifty-six year sentence is constitutional. Our review of the constitutionality of a sentence is de novo. *Abrams v. State*, 971 So. 2d 1033, 1035 (Fla. 4th DCA 2008) (citing *Russ v. State*, 832 So. 2d 901, 906 (Fla. 1st DCA 2002)).

We conclude, based on the specific language in *Henry* and the court's ruling in *Thomas*, that the constitutionality of a juvenile offender's lengthy term-of-years sentence is not solely dependent on the juvenile's life expectancy at the time of sentencing, i.e. whether a de facto life sentence has been imposed. In its analysis of *Graham*, nowhere does the court in *Henry* specifically state that *only* term-of-years sentences that chronologically compute to de facto life sentences are unconstitutional. From *Henry* and *Thomas*, we discern that our supreme court intends that lengthy term-of-year sentences for these types of offenders, without a review mechanism and the opportunity for early release, are constitutionally infirm, regardless of whether the sentence is a de facto life sentence. Accordingly, we conclude that the court's admonition that a constitutional sentence is one that provides a meaningful opportunity for *early* release is not satisfied simply because the juvenile may be geriatrically released from prison at some point before the conclusion of his or her statistical or actuarial life expectancy.[8]

_____

[8] As we discussed in our opinion in *Henry*—a myriad of diverse factors, such as race, gender, or socioeconomic status arguably can affect an individual's life expectancy. *Henry*, 82 So. 3d at 1089. In the instant case, Peterson is an African American male. If he serves his complete sentence, Peterson will be approximately seventy-four years old when released from prison. Depending on which specific life expectancy table is used, Peterson may well have received a de facto life sentence. However, for a similarly situated white male or white female, whose statistical life expectancy is arguably longer,

8

Finally, we recognize that Peterson's judgment and sentence was final long before the United States Supreme Court issued *Graham.* Recently, that Court determined that its decision in *Miller*, which held that life sentences for juveniles convicted of homicide was unconstitutional, was entitled to retroactive effect. *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). The Florida Supreme Court has also held that *Miller* is to be applied retroactively. *Falcon v. State*, 162 So. 3d 954, 962 (Fla. 2015). We agree with our sister courts that there is no material difference between *Graham* and *Miller* in terms of the analysis required for retroactivity, *Williams*, 41 Fla. L. Weekly D508; *St. Val v. State*, 107 So. 3d 553, 554 (Fla. 4th DCA 2013), and expressly join these courts in concluding that *Graham* is to be applied retroactively.[9] Therefore, we hold that Peterson's initial fifty-six-year sentence was prohibited under the Eighth Amendment and direct that Peterson be resentenced in light of the new juvenile sentencing legislation now codified at sections 775.082, 921.1401, and 921.1402, Florida Statutes.[10] *See Horsley*, 160 So. 3d at 395.

---

then a fifty-six-year sentence is not a de facto life sentence. Moreover, as we raised in *Henry*, it is unclear whether gain time would be a factor in this analysis. *Id.* If it is, and, pursuant to section 921.002(1)(e), Florida Statutes (2002), Peterson serves only eighty-five percent of his sentence, then his sentence is not a de facto life sentence, but then the sixty-year sentence in *Guzman*, that Justice Pariente clearly inferred would be an unconstitutional sentence, would arguably not be a de facto life sentence if Guzman's nine years of gain time is considered.

[9] In *Weiand v. State*, 129 So. 3d 434, 434–35 (Fla. 5th DCA 2013), we reversed life sentences imposed on a juvenile nonhomicide offender in 1988 and remanded for resentencing, impliedly concluding that *Graham* applied retroactively.

[10] To be clear, we are not holding or suggesting that a fifty-six-year sentence is unwarranted, but only that whatever sentence is imposed after remand must also provide for the statutorily required review hearing if the sentence exceeds twenty years.

9

Perceiving the need for additional guidance from our supreme court regarding lengthy term-of-years sentences imposed on juvenile nonhomicide offenders prior to July 1, 2014, we certify the following questions as being of great public importance:

> 1.    DOES *HENRY V. STATE*, 175 SO. 3D 675 (FLA. 2015), *ONLY* APPLY TO LENGTHY TERM-OF-YEARS SENTENCES THAT AMOUNT TO DE FACTO LIFE SENTENCES?
>
> 2.    DOES *HENRY* APPLY RETROACTIVELY TO SENTENCES THAT WERE FINAL AT THE TIME *HENRY* WAS DECIDED?
>
> 3.    IF *HENRY* ONLY APPLIES TO DE FACTO LIFE SENTENCES, THEN, IN DETERMINING WHETHER A TERM-OF-YEARS SENTENCE IS A DE FACTO LIFE SENTENCE, SHOULD FACTORS SUCH AS GENDER, RACE, SOCIOECONOMIC STATUS, AND POTENTIAL GAIN TIME BE CONSIDERED?
>
> 4.    IF SO, AT WHAT POINT DOES A TERM-OF-YEARS SENTENCE BECOME A DE FACTO LIFE SENTENCE?

We also certify conflict with *Collins*, 41 Fla. L. Weekly D1003, which held that a juvenile nonhomicide offender's aggregate fifty-five-year prison sentence is valid.

SENTENCE VACATED; REMANDED FOR RESENTENCING; QUESTIONS CERTIFIED; CONFLICT CERTIFIED.

TORPY, J., concurs.
BERGER, J., concurs in part and dissents in part, with opinion.

BERGER, J., concurring in part; and dissenting in part.  <span>5D15-3799</span>

I agree with the majority decision to certify questions of great public importance. However, because I cannot conclude that Peterson's fifty-six year prison sentence constitutes a de facto life sentence, I respectfully dissent.