FORST, J.
This case brings to the fore a number of still unanswered questions regarding the boundaries in juvenile sentencing in the wake of Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). In that case, the Supreme Court of the Unit *547 ed States held that a life sentence without parole for a juvenile who did not commit homicide is cruel and unusual punishment under the Eighth Amendment. Id. at 74. The Florida Supreme Court later concluded that, in Florida, a lengthy term-of-years sentence can constitute cruel and unusual punishment under the reasoning of Graham. Henry v. State, 175 So.3d 675, 680 (Fla.2015); Gridine v. State, 175 So.3d 672, 674-75 (Fla.2015).
In the case before us, we affirm Appellant Robert Lee Davis Jr.’s sentence because he has not shown that his 75-year sentence fails to afford him a meaningful opportunity for release within his natural life. This is because the record shows that, despite the lengthy term of years, Appellant has been given the opportunity to receive substantial amounts of gain-time and, in fact, is expected to be released when he is in his mid-50s.
We recognize continuing conflict among the. district courts of this state on this issue. We thus certify several questions of great public importance with the hope that the Florida Supreme Court or the Legislature will act to bring more clarity and uniformity in this area of the law.
Background
In 1991, Appellant entered a plea to attempted first degree murder with a firearm, attempted second degree murder with a firearm, and aggravated assault with a firearm. Appellant committed the offenses on February 4,1991, when he was 16 years old. ’The trial court sentenced Appellant to consecutive terms of 40 years for the attempted first degree murder, 30 years for the attempted second degree murder, and 5 years for the aggravated assault. As a result, Appellant received an aggregate sentence of 75 years in prison.
In April 2015, Appellant filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. He claimed that his. 75-year aggregate sentence was a de facto life sentence that did not provide him a meaningful opportunity for release within his natural life. The sworn motion recognized that Appellant’s current release date was set at April 13, 2030 and alleged' that, if he received the maximum amount of gain-time and the earliest possible release date, he would be approximately 68 or 69 years of age when released. Of note, Appellant was born April 1, 1974. Thus, on April 13, 2030, he would be 56 years old, not 68 or 69.
The trial court denied the motion with a well-reasoned explanatory order. The court explained that the facts of the crime were horrific: “On February 4, 1991 the defendant fired 3 rounds from a .45 caliber handgun, striking [the victim] in the throat. She was given a 20% chance to live. She did survive, but as a result, she was permanently paralyzed from the chest down.” The court noted that Appellant was almost 17 years old when he attempted to kill and paralyzed the victim. The trial court explained that Appellant would be 56 years old if released in April 2030 and that he did not receive a de facto life sentence.
The trial court distinguished the Florida Supreme Court’s decisions in Gridine (involving a 70-year aggregate sentence) and Henry (involving a 90-year aggregate sentence). The defendant in Gridine would have been 84 years old on his release date, and the defendant in Henry would have been imprisoned until he was at least 95 years old. The sentences in both cases required the defendants to be incarcerated well beyond the average life expectancy of 78.8 years.
In contrast, ,the trial court found that Appellant’s scheduled release at the age of 56 meant that his sentence afforded him a *548 meaningful opportunity for -release during his natural life. This appeal followed.
Analysis
In Graham, the United States Supreme Court held that “for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole,” 560 U.S. at 74, 130 S.Ct. 2011. Graham applies retroactively to cases that were final on direct appeal, such as Appellant’s case. St. Val v. State, 107 So.3d 553, 554 (Fla. 4th DCA 2013).
In Henry, the Florida Supreme Court held “that the constitutional prohibition against cruel and unusual punishment under Graham is implicated when a juvenile nonhomicide offender’s sentence does not afford any ‘meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation,’ ” 175 So.3d at 679 (quoting Graham, 560 U.S. at 75, 130 S.Ct. 2011). The court concluded'that, because Henry’s aggregate sentence of 90 years in prison “require[d] him to be imprisoned until he is at least nearly ninety-five years old, [it] d[id] not afford him this opportunity, [and] that sentence is unconstitutional under Graham.” Henry, 175 So.3d at 680. The court explained:
We conclude that Graham prohibits the state trial courts from sentencing juvenile nonhomicide offenders to prison terms that ensure these offenders will be imprisoned without obtaining a meaningful opportunity to obtain future early release during their natural lives based on their demonstrated maturity and rehabilitation.

Id.

In Gridine, the Florida Supreme Court similarly held that Gridine’s 70-year prison sentence was unconstitutional because it “d[id] not provide a meaningful opportunity for future release.” 175 So.3d at 673.
In both Henry and Gridine, the Florida Supreme Court held that the defendants should be resentenced under the sentencing provisions enacted in Chapter 2014-220, Laws of Florida, and codified in sections 775.082, 921.1401, and 921.1402 of the Florida Statutes. Henry, 175 So.3d at 680; Gridine, 175 So.3d at 675.
Florida courts both before and after Henry and Gridine have reached differing conclusions as to when a term of years constitutes cruel and unusual punishment or amounts to a “de facto life sentence” that violates Graham. Several cases are currently pending before the Florida Supreme Court that raise the issue.
Recently, the First District Court of Appeal affirmed a trial court’s “aggregate sentence of 55 years,” holding that this sentence “does not amount to a de facto life sentence.” Collins v. State, 189 So.3d 342, 343 (Fla. 1st DCA 2016), petition for discretionary review pending, No. SC16-716 (Fla.2016). The trial court in that case found:
[The defendant’s] new aggregate sentence would require him to serve at least 52 years in prison, and his earliest eligibility for release would be at age 66 years 8 months; if serving his full 55-year sentence, he would be released at age 69 years 8 months. The court noted a life expectancy between 73 and 84.4 years, concluding that because his age upon release did not exceed his life , expectancy, his aggregate sentences did not constitute a de facto life sentence.
Id.; see also Kelsey v. State, 183 So.3d 439, 440 (Fla. 1st DCA 2015) (declining to vacate, under Graham and Henry, a 45-year sentence imposed on a juvenile), rev. granted, No. SC15-2079, 2015 WL 7720518 (Fla. Nov. 19, 2015).
In Abrakata v. State, 168 So.3d 251 (Fla. 1st DCA 2015), petition for discretionary review pending, No. SC15-1325 (Fla.2015), *549 the court held that a 25-year mandatory minimum sentence was not a de facto life sentence without parole in violation of Graham. Id. at 251-52. Further, the Abrakata court refused to retroactively apply section 921.1402, which by its terms applies to offenses committed on or after July 1, 2014. Id. at 252 (“[Ajbsent a violation of Graham, there is no legal basis to retroactively apply section 921.1402 (or any other provision of the juvenile sentencing legislation enacted in 2014) to the 2011 offense in this case.”).
Notwithstanding the Florida Supreme Court’s recent decisions in Henry and Gridine, important questions as to how courts are to determine whether a prison term fails to afford a meaningful opportunity for early release during the offender’s natural life remain unanswered, such as:
• Should a court considering such a claim look solely to the term of the sentence or must it also consider the defendant’s actual/expected release date?
• Should courts consider life expectancy in making the determination and, if so, what measure of life expectancy should be used?
• If a defendant will be released at or near life expectancy, is this a “meaningful” opportunity for release?
Courts have struggled in determining where to draw the liné. For example, a 60-year sentence with a 50-year minimum mandatory has been found to be a de facto life sentence.
Appellant’s sentence [60 years with 50-year minimum mandatory] will require him to serve at least 58.5 years in prison, which means he will not be released until he is nearly 76 years old. This exceeds his life expectancy, as reflected in the National Vital Statistics Reports from the federal Centers for Disease Control and Prevention cited by Appellant in his rule 3.800(b)(2) motion. Thus, applying the rule of law set forth above, we hold that Appellant’s sentence is a de facto life sentence that is unconstitutional under Graham.
Adams v. State, 188 So.3d 849, 851-52 (Fla. 1st DCA 2012) (footnotes omitted), rev. denied, No. SC12-1795, 2016 WL 234892 (Fla. Jan. 20, 2016); see also Brooks v. State, 186 So.3d 564, 567 (Fla. 5th DCA 2015) (concluding that a 65-year sentence violated Graham); Barnes v. State, 175 So.3d 380, 381 (Fla. 5th DCA 2015) (concluding that a 60-year sentence was unconstitutional); Morris v. State, 198 So.3d 31 (Fla. 2d DCA 2015) (reversing a 65-year sentence under Henry and Gri-dine because it did not provide the defendant with a meaningful opportunity for release).
On the other hand, a 50-year sentence with a 20-year minimum mandatory was found not to be a de facto life sentence. The court looked to when the defendant would be released if he served the entire term.
[Williams, the defendant] received 417 days of jail credit for time served prior to his sentencing. Even if Williams is required to serve every day of his fifty-year sentence, he would be released from prison at age sixty-eight. Williams will be afforded the opportunity for release, based on demonstrated maturity and rehabilitation, during his natural life.' Moreover, although Williams will be required to serve every day of the twenty-year minimum-mandatory term of his kidnapping sentence, he will be eligible for gain time as determined by the Department of Corrections.
Williams v. State, 197 So.3d 569, 572 (Fla. 2d DCA 2016) (citation omitted); see also Collins v. State, 189 So.3d at 343 (holding that the aggregate sentence of 52-to-55 *550 years for a 16 year-old does “not amount to a defacto life sentence”).
Returning to the case presently before this Court, Appellant was sentenced to an aggregate term of 75 years, but because he committed his offenses in 1991, he is eligible for substantial amounts of gain-time and is not required to serve at least 85% of his sentence. See Ch. 95-294,- Laws of Fla. (designated the Stop Turning Out Prisoners Act and enacting section 944.275(4)(b)3, Florida Statutes, which limits gain-time awards that would result in a defendant’s release before serving a minimum of 85% of the imposed sentence).
The reality is that defendants sentenced before the Stop Turning Out Prisoners Act generally have the “meaningful opportunity ... based on demonstrated maturity and rehabilitation,” to serve substantially less time than the term of years imposed by the court. It is our view that this reality cannot be ignored in the analysis.
The burden in these postconviction proceedings is on Appellant. He must show that his sentence constitutes cruel and unusual punishment under Graham, as applied by our supreme court in Henry and Gridine. The trial court correctly determined that Appellant failed to show that his sentence deprives him of a meaningful opportunity for release during his natural life.
By his own sworn assertion in his motion, Appellant was scheduled for release in 2030 when he will be in .his mid-50s. Appellant has not shown that this date exceeds his life expectancy. He also continues to accrue gain-time that further advances his release date.[1] Thus, his sentence grants him a meaningful opportunity to obtain future release during his natural life, by means of the gain-time he -has earned and can continue to earn “based on demonstrated maturity and rehabilitation.”
In 2014, the Legislature passed Chapter 2014-220, Laws of Florida, which enacted new sentencing provisions for juvenile offenders. This Legislative fix was “designed to bring Florida’s juvenile sentencing statutes into compliance with the United States Supreme Court’s recent Eighth Amendment juvenile sentencing jurisprudence.” Horsley v. State, 160 So.3d 393, 394 (Fla.2015).[2]
Depending on the circumstances, these new sentencing provisions allow defendants who were sentenced for offenses committed as a juvenile to obtain judicial review of their sentence after certain periods of time. See §§ 775.082(l)(b), 775.082(3)(a)5, 775.082(3)(b)2, Fla. Stat. (2015). For example, for non-homicide offenses punishable by life, juveniles sentenced to terms longer than 20 years are entitled to sentence review. § 775.082(3)(c). During sentencing review, the court is permitted to modify the sentence. Such juveniles are entitled to review after 20 years and, if not resen-tenced, again 10 years after the first review. § 921.1402(2)(d). The availability of review sometimes depends on whether the defendant actually killed, intended to kill, or attempted to kill the victim. For example, in Appellant’s situation, because he attempted to kill the victim, he would be entitled to sentence review after 25 years *551 if this new statute applied to his sentence. §§ 775.082(3)(a)5.a, 921.1402(2)(b).
Importantly, however, the Legislature has expressly provided that these sentence review provisions apply only to juvenile non-homicide offenders who committed their offenses on or after July 1, 2014. § 921.1402(1), Fla. Stat. (2015).
In Peterson v. State, 193 So.3d 1034 (Fla. 5th DCA 2016), the Fifth District Court of Appeal concluded that, regardless of life expectancy or whether a sentence is a de facto life sentence, Henry applies to lengthy term-of-year sentences that do not provide a review mechanism and opportunity for early release. Id. at 1036. Peterson held that, pursuant to Henry, the defendant’s 56-year sentence was prohibited by the Eighth Amendment. Id. at 1038. Peterson certified conflict with Collins, where the First District Court of Appeal concluded that the juvenile’s aggregate sentence of 55 years was valid. Id. at 1039. Peterson remanded for resentenc-ing under the new sentencing scheme for juvenile offenders that the Florida Legislature passed in 2014, notwithstanding the fact that the defendant had not been convicted of homicide. Id.
Peterson relied in part on Thomas v. State, 177 So.3d 1275 (Fla.2015), in reaching its conclusion that these new sentencing provisions apply to lengthy term-of-years sentences without a review mechanism.
In Thomas, the defendant had been re-sentenced following the decision in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012), to an aggregate term of 40 years in prison. Thomas v. State, 135 So.3d 590, 590 (Fla. 1st DCA 2014). Although the offenses (which included first-degree murder) had been committed before July 1, 2014, and even though the 40-year term was not found to be a de facto life sentence, the Florida Supreme Court in a one-paragraph opinion remanded for resentencing under the new sentencing framework. Thomas, 177 So.3d at 1275.
Peterson observed that the Florida Supreme Court in Henry did not condition the constitutionality of the sentence on whether it exceeded life expectancy. “[T]he specific sentence that a juvenile nonhomicide offender receives for committing a given offense is not dispositive as to whether the prohibition against cruel and unusual punishment is implicated.” Henry, 175 So.3d at 680. Peterson noted that the juvenile in Thomas had committed a homicide, whereas Peterson had not. Nevertheless, after expressing a desire to retroactively apply Graham in the same manner as Miller, the Fifth District Court of Appeal directed that Peterson be resen-tenced in the same manner (pursuant to the scheme set forth in the 2014 legislation) as the defendant in Thomas. Peterson concluded: “From Henry and Thomas, we discern that our supreme court intends that lengthy term-of-year sentences for these types of offenders, without a review mechanism and the opportunity for early release, are constitutionally infirm, regardless of whether the sentence is a de facto life sentence.” Peterson, 193 So.3d at 1038. This aspect of the court’s opinion relied upon Judge Benton’s dissent in Kelsey, wherein he noted that, as in Thomas, although the defendant had already been resentenced, he should be entitled to the sentencing review provisions of the new legislation. Kelsey, 183 So.3d at 447 (Benton, J., dissenting).
On the other hand, the First' District Court of Appeal in Abrakata refused to retroactively apply the sentence review provisions to non-homicide offenses committed after July 1, 2014. 168 So.3d at 252. “[A]bsent a violation of Graham, there is no legal basis to retroactively ap *552 ply section 921.1402 (or any other provision of the juvenile sentencing legislation enacted in 2014) to the 2011 offense in this case.” Id.
It is tempting ⅛0 follow Peterson and conclude simply that the sentence review provisions of the 2014 legislation apply retroactively to all offenders sentenced for offenses committed as juveniles — non-murderers as well as murderers — regardless of the date of their offense. However, the Legislature has expressly provided against retroactive application of its 2014 legislation, and the Florida Supreme Court has not made any clear pronouncement. Based on the text of the respective statutes, our understanding of the 2014 legislation is that it was an attempt by the Legislature to comply with Miller through retroactive application in homicide cases (such as Thomas), but that the changes to sentencing meant to comply with Graham were not intended to be retroactive in non-homicide cases (such as Peterson, Abrakata, and this case). Whether the differentiation was intentional is unclear..

Conclusion

We affirm the trial court’s denial of Appellant’s postconviction motion because Appellant did not demonstrate that his sentence fails to afford him a meaningful opportunity, for release within his natural life.
We certify conflict with Peterson v. State, 193 So.3d 1034 (Fla. 5th DCA 2016), and we further certify the following questions of great public importance:
1. AT WHAT POINT DOES A TERM-OF-YEARS SENTENCE BECOME UNCONSTITUTIONAL UNDER GRAHAM v. FLORIDA, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), AND HENRY v. STATE, 175 So.3d 675 (Fla.2015)?
2. SHOULD COURTS CONSIDER LIFE EXPECTANCY IN DETERMINING . WHETHER A SENTENCE IS UNCONSTITUTIONAL - UNDER GRAHAM AND HENRY? IF SO, WHAT MEASURE OF life EXPECTANCY SHOULD BE USED?
3. SHOULD COURTS CONSIDER THE DEFENDANT’S EXPECTED RELEASE DATE (ACCOUNTING FOR GAIN-TIME OR OTHER CREDITS) OR SHOULD COURTS LOOK SOLELY TO THE TERM-OF-YEARS IMPOSED BY THE SENTENCING COURT?
4. DO THE SENTENCE REVIEW PROVISIONS ENACTED IN CHAPTER 2014-220, LAWS OF FLORIDA, APPLY TO ALL JUVENILE OFFENDERS WHOSE SENTENCES EXCEED THE STATUTORY THRESHOLDS, EVEN THOSE CONVICTED OF NON-HOMICIDE OFFENSES COMMITTED PRIOR TO JULY 1, 2014?

Affirmed. Conflict and questions certified.

WARNER and MAY, JJ., concur.

. For example, as of August 24, 2016, the Florida Department of Corrections’ website reflects Appellant’s current release date as May 30, 2029.

. In addition to Graham, the 2014 legislation was designed to comply with the U.S. Supreme Court’s decision in Miller v. Alabama, - U.S. -, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012), which held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.”