IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

DARRIUS MONTGOMERY,

      Appellant,

v.                                     Case No. 5D14-3615

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed November 9, 2017

Appeal from the Circuit Court
for Orange County,
Renee A. Roche, Judge.

James S. Purdy, Public Defender, and Susan
A. Fagan, Assistant Public Defender, Daytona
Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Rebecca Rock McGuigan,
Assistant Attorney General, Daytona Beach,
for Appellee.


ORFINGER, J.

Darrius Montgomery, seventeen years old at the time he committed his offenses,

was convicted of attempted robbery with a firearm, aggravated assault with a firearm,

aggravated battery with a firearm, and attempted felony murder with a firearm. On each

count, the jury found that he discharged a firearm resulting in great bodily harm but not

death. Montgomery was later sentenced to twenty-five years' imprisonment with twenty-

five-year mandatory minimum terms for the attempted robbery and aggravated battery offenses, twenty years' imprisonment with a twenty-year mandatory minimum term for the aggravated assault, and thirty years' imprisonment with a twenty-five-year mandatory minimum term for the attempted felony murder. All sentences were imposed pursuant to the 2012 version of the 10-20-Life statute, section 775.087(2), Florida Statutes, and ordered to be served concurrently.

While his appeal was pending, Montgomery filed a timely motion to correct sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), arguing that he is a juvenile offender and entitled to a juvenile sentencing hearing and judicial review hearing in accordance with the procedures outlined in chapter 2014–220, Laws of Florida, codified in sections 775.082, 921.1401, and 921.1402, Florida Statutes (2014), for the attempted robbery, aggravated battery, and attempted felony murder convictions. The trial court agreed in part, and ordered a new sentencing hearing for those three convictions. After the hearing, the State submitted a memorandum of law, conceding that Montgomery was entitled to a review of his sentence after twenty years pursuant to section 921.1402(2)(d).[1] The trial court then entered an order granting review of Montgomery's sentences after twenty years but did not issue amended sentencing orders. Montgomery filed a second rule 3.800(b)(2) motion, asking the court to vacate his sentences for those three convictions and to hold a juvenile sentencing hearing under section 775.082(3)(c), and make the necessary findings in accordance with sections 921.1401 and 921.1402 that he is a juvenile offender and entitled to a sentencing review hearing after twenty years.

---

[1] On appeal, without explanation, the State reverses course and broadly argues that Montgomery's sentence does not violate the Eighth Amendment and that he is not entitled to be sentenced under the provisions of Chapter 2014-220.

Montgomery also asked the court to vacate the mandatory minimum sentences imposed under section 775.087(2) on all four of his convictions, arguing that, as to juveniles, the 2014 juvenile sentencing statutes supersede the mandatory minimum sentences required by section 775.087(2). The trial court disagreed, rescinded its earlier order, and held that Montgomery was not entitled to a review hearing after serving twenty years.

On appeal, Montgomery argues that he is entitled to resentencing as his sentences violate the Eighth Amendment to the United States Constitution and that the 10-20-Life statute no longer applies to juvenile offenders tried and convicted as adults. We agree in part and reverse. The legality of a sentence is a question of law, and thus, subject to de novo review. Pinkard v. State, 185 So. 3d 1289, 1289-90 (Fla. 5th DCA 2016). Similarly, our review of the constitutionality of a sentence is de novo. Peterson v. State, 193 So. 3d 1034, 1038 (Fla. 5th DCA 2016).

The unsettled state of juvenile sentencing for nonhomicide offenders began with Graham v. Florida, 560 U.S. 48 (2010), when the Supreme Court held that the United States Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit a homicide. The Court explained that a state is not required to guarantee the juvenile offender eventual release, but if it imposes a life sentence, it must provide the juvenile with some realistic opportunity to obtain release before the end of that term. Following Graham, a unanimous Florida Supreme Court held that "the constitutional prohibition against cruel and unusual punishment under Graham is implicated when a juvenile nonhomicide offender's sentence does not afford any 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" Henry v. State, 175 So. 3d 675, 679 (Fla. 2015) (quoting Graham, 560

U.S. at 75). In reaching this holding the Florida Supreme Court reasoned that the "Supreme Court's long-held and consistent view that juveniles are different" supported the conclusion that "the specific sentence that a juvenile nonhomicide offender receives for committing a given offense is not dispositive as to whether the prohibition against cruel and unusual punishment is implicated." Id. at 680. Accordingly, it determined that Graham was intended to ensure that "juvenile nonhomicide offenders will not be sentenced to terms of imprisonment without affording them a meaningful opportunity for early release based on a demonstration of maturity and rehabilitation." Id. The holding in Henry was not predicated on the length of the sentence, but rather on the status of, and the opportunity afforded, the juvenile offender for early release. Johnson v. State, 215 So. 3d 1237, 1240 (Fla. 2017); Henry, 175 So. 3d at 680 (stating that "Eighth Amendment will not tolerate prison sentences that lack a review mechanism for evaluating [juvenile nonhomicide] offenders for demonstrable maturity and reform in the future").

In Kelsey v. State, 206 So. 3d 5 (Fla. 2016), the supreme court reiterated its reasoning that the constitutionality of a juvenile offender's sentence is not based on the length of the sentence, but rather, it is dependent upon whether the sentence provided the offender with a meaningful opportunity for early release based on maturation and rehabilitation. Id. at 9. Based on its decision in Henry, which it described as "unequivocal," it reaffirmed that all juvenile offenders whose sentences met the standard defined by the Legislature in chapter 2014–220, Laws of Florida, which includes any sentence longer than twenty years, are entitled to judicial review, not simply those term-of-years sentences that are "de facto life." Id. at 9–11. Thus, the Florida Supreme Court

4

has "determined that Graham prohibits juvenile nonhomicide offenders from serving lengthy terms of incarceration without any form of judicial review mechanism." Johnson, 215 So. 3d at 1240. The length of the sentence alone is not dispositive. Rather, the Florida Supreme Court has concluded that the Eighth Amendment, as read through Graham, requires a review mechanism for nonhomicide juvenile offenders because "any term of imprisonment for a juvenile is qualitatively different than a comparable period of incarceration is for an adult." Id. (citing Henry, 175 So. 3d at 680). Our supreme court has opined that reading Graham, Henry and Kelsey together requires that juvenile nonhomicide offenders receive sentences that provide a meaningful opportunity for early release based on demonstrated maturity and rehabilitation during their natural lifetimes. Id. at 1239.

In an effort to comply with Graham, in 2014, the Legislature passed chapter 2014–220, Laws of Florida, which provided judicial review for juvenile offenders, who were tried as adults, and received sentences of more than twenty years' incarceration, with certain exceptions. In considering a remedy for a Graham violation, our supreme court concluded in Horsley v. State, 160 So. 3d 393, 394-95, 405 (Fla. 2015), that chapter 2014-220, Laws of Florida, brought Florida's juvenile sentencing statutes into compliance with Graham and provided an appropriate remedy for all juvenile offenders whose sentences are unconstitutional even when, as here, the juvenile's offense was committed prior to the July 1, 2014, effective date of the legislation. See also Falcon v. State, 162 So. 3d 954, 963 (Fla. 2015).

Following Graham, Henry and Horsley, this Court in Peterson v. State, 193 So. 3d 1034 (Fla. 5th DCA 2016), review denied, No. SC16-1211 (Fla. June 23, 2017), explained

5

that, regardless of whether a juvenile offender's sentence is a de facto life sentence, a lengthy term-of-years sentence that does not afford a nonhomicide juvenile offender a meaningful opportunity for early release based on demonstrated maturity and rehabilitation violates Graham and the Eighth Amendment, requiring resentencing with retroactive application of the 2014 sentencing framework. We concluded that the supreme court's admonition that a constitutional sentence is one that provides a meaningful opportunity for early release is not satisfied simply because the juvenile may be released from prison at some point before the conclusion of his or her life expectancy. Peterson, 193 So. 3d at 1038. As a result, we held that Peterson's fifty-six-year sentence could not stand under Graham and its progeny, and remanded for the trial court to resentence him under the 2014 juvenile sentencing statutes pursuant to Horsley. Id. at 1039; see also Burrows v. State, 219 So. 3d 910, 911 (Fla. 5th DCA 2017) (holding defendant with concurrent twenty-five-year sentences was entitled to judicial review after twenty years); Tyson v. State, 199 So. 3d 1087, 1088 (Fla. 5th DCA 2016) (holding defendant with aggregate forty-five-year sentence was entitled to judicial review after twenty years).

Based on these precedents, we agree that the trial court erred in denying Montgomery's rule 3.800(b) motions.[2] We reverse Montgomery's sentences for

---

[2] In denying Montgomery's rule 3.800(b)(2) motions, the trial court did not rely on our decision in Peterson, and instead relied on Abrakata v. State, 168 So. 3d 251, 252 (Fla. 1st DCA 2015), where the First District Court of Appeal concluded that the defendant's twenty-five-year mandatory minimum sentence did not violate Graham. In reaching this conclusion, the First District relied on cases that held that forty-five-year and fifty-year sentences imposed on juvenile offenders were constitutional because they did not amount to a "de facto" life sentence. Abrakata, 168 So. 3d at 252 (citing Austin v. State, 127 So. 3d 1286 (Fla. 1st DCA 2013); Thomas v. State, 78 So. 3d 644 (Fla. 1st DCA 2011)). The First District's reliance on these cases seems to contradict Henry, 175

6

attempted robbery with a firearm, aggravated battery with a firearm, and attempted felony murder with a firearm and remand for resentencing in conformance with the 2014 juvenile sentencing statutes, which includes the judicial review provided by section 921.1402. However, Montgomery is not entitled to resentencing or a review hearing on the aggravated assault with a firearm conviction. See Kelsey, 206 So. 3d at 11 (holding Graham required judicial review hearings for juvenile offenders who are sentenced to terms longer than twenty years).

Montgomery's challenge to the imposition of the twenty-five-year mandatory minimum prison sentences under section 775.087(2), Florida Statutes (2012), commonly known as the 10-20-Life statute, requires us to consider the interplay between the mandatory minimum sentences imposed here and the juvenile sentencing scheme, which mandates a review hearing with the possibility of early release. The 10–20–Life statute provides for mandatory minimum sentences for certain offenses when a defendant possesses a firearm (minimum term of imprisonment of either three years or ten years, depending on the offense), discharges a firearm (minimum term of imprisonment of twenty years), or discharges a firearm and as the result of the discharge, inflicts death or great bodily harm ("minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison"). § 775.087(2)(a)(1)-(3), Fla. Stat. (2012). At the same time, under the 2014 juvenile sentencing statutes, a juvenile offender who commits a life or first-degree felony punishable by life is entitled to an individualized

---

So. 3d at 680, which held that the Eighth Amendment "will not tolerate [a juvenile offender's] prison sentence[ ] that lack[s] a review mechanism," and the later opinion in Kelsey, 206 So. 3d 5, which vacated a juvenile offender's forty-five-year sentence as unconstitutional and remanded for resentencing with the benefit of a judicial review.

sentencing hearing under sections 775.082(3) and 921.1401, Florida Statutes (2014). And, a juvenile nonhomicide offender "sentenced to a term of 20 years or more under s. 775.082(3)(c) is entitled to a review of his or her sentence after 20 years." § 921.1402(2)(d), Fla. Stat. (2014). Thus, we must determine if a trial court may release a juvenile after the twenty-year judicial review even if a portion of the mandatory minimum sentence remains.

We review questions of statutory interpretation de novo. Patrick v. Hess, 212 So. 3d 1039, 1041 (Fla. 2017). Our goal "is to determine legislative intent." Crews v. State, 183 So. 3d 329, 332 (Fla. 2015). To do so, we begin with the plain meaning of the text of the statute. Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013). "When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005). The statute's plain and ordinary meaning must control unless this leads to an unreasonable result or a result clearly contrary to legislative intent. Id.

One rule that guides our analysis is "[t]he doctrine of in pari materia . . . [which] requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent." Larimore v. State, 2 So. 3d 101, 106 (Fla. 2008) (quoting Fla. Dep't of State v. Martin, 916 So. 2d 763, 768 (Fla. 2005)). In applying this rule, courts attempt to harmonize potentially conflicting statutes, if possible. Jones v. ETS of New Orleans, Inc., 793 So. 2d 912, 914-15 (Fla. 2001) (quoting Acosta v. Richter, 671 So. 2d 149, 153-54 (Fla. 1996)).

8

In 1999, the Florida Legislature enacted the 10-20-Life statute. Section 775.087(2)(a)3., relevant here, provides for a twenty-five-year mandatory minimum:

> Any person who is convicted of a felony or an attempt to commit a felony listed in sub-subparagraphs (a)1.a.-q., regardless of whether the use of a weapon is an element of the felony, and during the course of the commission of the felony such person discharged a "firearm" or "destructive device" as defined in s. 790.001 and, as the result of the discharge, death or great bodily harm was inflicted upon any person, the convicted person *shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison*.

(Emphasis added). If a defendant falls within the purview of this statute, the trial court must impose a mandatory minimum sentence of twenty-five years under section 775.087(2)(a)3. Mendenhall v. State, 48 So. 3d 740, 742 (Fla. 2010).

At the same time, the United States Supreme Court's jurisprudence regarding juvenile sentencing informs us that, as a matter of constitutional law, "children are constitutionally different from adults for purposes of sentencing," and these differences are not "crime-specific." Miller v. Alabama, 567 U.S. 460, 471, 473 (2012); see Graham, 560 U.S. at 68; Roper v. Simmons, 543 U.S. 551, 572-73 (2005). In recognition of this difference and in response to the United States Supreme Court's decisions, the Florida Legislature passed chapter 2014–220 in 2014. See Horsley, 160 So. 3d at 394. The preamble to this chapter reflects that section 775.082 was amended, and sections 921.1401 and 921.1402 were created, to change the "criminal penalties applicable to . . . juvenile offender[s] for certain serious felonies" and establish "sentence review proceedings to be conducted after . . . specified period[s] of time . . . [for] certain offenses" committed by offenders under the age of eighteen. The sentencing scheme established in chapter 2014-220 provides, in relevant part, that juveniles convicted of nonhomicide

9

offenses and sentenced to a term of imprisonment of more than twenty years are entitled to a review of their sentences after twenty years. §§ 775.082(3)(c), 921.1402(2)(d), Fla. Stat. (2014). In reviewing a nonhomicide juvenile's sentence at twenty years, the sentencing court must determine whether a sentence modification is warranted after reviewing, among other things, the juvenile offender's youth and attendant characteristics at the time of the offense, whether the juvenile offender demonstrates maturity and rehabilitation, and whether the juvenile offender remains at the same level of risk to society as he or she did at the time of the initial sentencing. Id. § 921.1402(6).

As the Florida Supreme Court has stated:

> It is a well settled rule of statutory construction . . . that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms. In this situation "the statute relating to the particular part of the general subject will operate as an exception to or qualification of the general terms of the more comprehensive statute to the extent only of the repugnancy, if any."

McDonald v. State, 957 So. 2d 605, 610 (Fla. 2007) (quoting Adams v. Culver, 111 So. 2d 665, 667 (Fla. 1959)). And, a more recently enacted statute will control over older statutes as "[t]he more recently enacted provision may be viewed as the clearest and most recent expression of legislative intent." Palm Beach Cty. Canvassing Bd. v. Harris, 772 So. 2d 1273, 1287 (Fla. 2000); see also Fla. Virtual Sch. v. K12, Inc., 148 So. 3d 97, 102 (Fla. 2014). These principles thus require that if there is a conflict, sections 775.082 and 921.1402, which are more recent and specifically address the criminal penalties and sentence review procedures applicable to juveniles convicted of certain serious offenses, would prevail over section 775.087(2)(a), which is older and is a general sentencing statute covering the mandatory minimum for all offenders who, in the course of certain

10

felonies, discharge a firearm and, as a result of the discharge, cause death or great bodily harm.[3]

We believe these statutes can be harmonized because the juvenile sentencing statutes contemplate the modification of any sentence after the mandated judicial review. For example, under section 775.082(1)(b)1., a sentencing court is required to impose a minimum sentence of forty years to life imprisonment with a twenty-five-year judicial review (as long as the juvenile was not previously convicted of a separate criminal offense) when sentencing a juvenile convicted of a capital offense with an actual intent to kill. The forty-year minimum sentence notwithstanding, if the court determines at a sentence review hearing twenty-five years later that the juvenile offender has been rehabilitated and is reasonably believed to be fit to reenter society, the court is authorized to modify the sentence by releasing the juvenile based on maturity and rehabilitation but must impose a term of probation of at least five years. § 921.1402(7), Fla. Stat. (2014). This is still true even though section 944.275(4)(f), Florida Statutes (2014), which mandates prisoners to serve at least eighty-five percent of the sentence imposed, would require the juvenile offender to serve a minimum of thirty-four years. Nonetheless, the juvenile offender would be entitled to a judicial review and possible release in twenty-five years.

---

[3] This Court recently determined that the 2014 juvenile sentencing laws did not affect the ten-year mandatory minimum under section 775.087(2). Young v. State, 219 So. 3d 206, 210-11 (Fla. 5th DCA 2017). That case is distinguishable because no juvenile offender is entitled to a review hearing unless his sentence exceeds fifteen years. See § 921.1402(2)(c), Fla. Stat. (2015).

11

Reading the juvenile sentencing statutes and the 10-20-Life statute in pari materia, the following sentencing scheme emerges for nonhomicide juvenile offenders. Under section 775.082(3), the court must provide a nonhomicide juvenile offender, who is convicted of certain serious offenses, an individualized sentencing hearing. If the nonhomicide juvenile offender is sentenced to more than twenty years, the court must provide a judicial review after twenty years, pursuant to section 921.1402(2)(d), to afford him or her a meaningful opportunity to obtain early release. However, if the nonhomicide juvenile offender, in the course of committing certain enumerated felonies, discharged a firearm and as the result of the discharge, inflicted death or great bodily harm, the juvenile must be sentenced to a twenty-five-year mandatory minimum. § 775.087(2), Fla. Stat. (2012). Nonetheless, he or she would still be entitled to a twenty-year statutory review of his or her sentence under section 921.1402(2)(d) with the possibility of early release. See generally Gridine v. State, 175 So. 3d 672, 675 (Fla. 2015) (reversing juvenile nonhomicide offender's aggregate seventy-year sentence with twenty-five-year mandatory minimum because it failed to provide defendant with judicial review, and thereby, meaningful opportunity for future release). At that judicial review, after considering the enumerated factors of section 921.1402(6) along with any other factor it deems appropriate to review the juvenile's sentence, the sentencing court is authorized to modify the sentence and impose a term of probation of at least five years if the court determines modification is warranted. § 921.1402(7), Fla. Stat. (2014).

A twenty-five-year mandatory minimum sentence does not implicate the factors deemed unacceptable when those penalties are imposed on juveniles, namely, the futility of rehabilitation and the permanent deprivation of all hope to become a productive

member of society, both of which occur when the court is prevented from taking a second look at the incarcerated offender's demonstrated growth and maturity. Rather, irrespective of the twenty-five-year mandatory minimum, a juvenile offender will be able to work toward his rehabilitation and look forward to a judicial review after twenty years, with an opportunity for release at a relatively young age. Accordingly, we hold that the mandatory twenty-five-year minimum sentence at issue in this case does not constitute cruel and unusual punishment when applied to a juvenile offender as long as he or she gets the mandated judicial review.

We affirm Montgomery's convictions without further discussion, but reverse his sentences and remand for resentencing for the attempted robbery with a firearm, aggravated battery with a firearm, and attempted felony murder with a firearm convictions in conformance with chapter 2014–220, Laws of Florida, as codified in sections 775.082, 921.1401, and 921.1402, Florida Statutes (2014).

AFFIRMED in part; REVERSED in part; and REMANDED.

TORPY, J., concurs.
EIGNAUGLE, J., concurs in result only, with opinion.

13

EISNAUGLE, J., concurring in result only, with opinion.

While I commend the diligent work of the majority here, I concur solely because I am bound by *Burrows v. State*, 219 So. 3d 910 (Fla. 5th DCA 2017), where this court reversed a twenty-five-year sentence of a nonhomicide offender citing to *Kelsey v. State,* 206 So. 3d 5, 8 (Fla. 2016).[4]  In this case, Appellant was sentenced to thirty years before the Legislature adopted chapter 2014–220, Laws of Florida.  Therefore, before this court can apply the remedy set forth in chapter 2014–220, we must first determine that Appellant's thirty-year sentence violates the Eighth Amendment.  *See Henry v. State*, 175 So. 3d 675, 679 (Fla. 2015) ("Because we have determined that Henry's sentence is unconstitutional under *Graham*, we conclude that Henry should be resentenced in light of the new juvenile sentencing legislation . . . .").  Other than *Burrows*, the cases cited by the majority do not hold that Appellant's thirty-year sentence violates the Eighth Amendment.  Therefore, were it not for *Burrows*, I would affirm Appellant's sentence, and would not reach the interplay between sections 921.1402 and 775.087, Florida Statutes (2014).

The majority seems to rely on language from *Henry* to support its conclusion that the Constitution requires review of a thirty-year sentence, but *Henry* does no such thing.  In *Henry*, the supreme court held the juvenile offender's ninety-year term-of-years

---

[4] I recognize that the opinion in *Burrows* indicates that the State conceded error. In my view, the State should not have done so, and we should have rejected the State's concession.  *See Powell v. State*, 223 So. 3d 412 (Fla. 5th DCA 2017) (quoting *Perry v. State*, 808 So. 2d 268, 268 (Fla. 1st DCA 2002)).  Although the State initially conceded error in this case, it now correctly recognizes that Appellant's sentence does not violate *Graham*.

sentence was unconstitutional because the offender would not have a "meaningful opportunity for release." 175 So. 3d at 676. In so doing, *Henry* reasoned that "the *Graham* Court had no intention of limiting its new categorical rule to sentences denominated under the exclusive term of 'life in prison.'" *Id.* at 680. Thus, *Henry* considered the constitutionality of a de facto life sentence, and plainly does not require this court to find that a thirty-year sentence is unconstitutional.

The same is true for *Horsley*[5] and *Peterson.*[6] *Horsley* did no more than announce that chapter 2014–220 would serve as the remedy for all juvenile sentences that violate *Graham*, even when the offense was committed before the Legislature adopted chapter 2014–220. *Horsley*, 160 So. 3d at 405. I concede that Appellant would be entitled to the remedy provided in chapter 2014–220 *if his sentence were unconstitutional*. Thus, *Horsley*'s holding begs the question presented and is of no consequence here.

In *Peterson*, this court concluded that a fifty-seven-year sentence without a review mechanism violated *Graham*, even though it did not amount to a "de facto life sentence." *Peterson*, 193 So. 3d at 1038. Again, however, *Peterson* does not require the majority's holding today that a thirty-year sentence is also unconstitutional. Just because Florida's courts have concluded that a sentence need not amount to "de facto life" to violate *Graham*, it does not follow that all juvenile sentences require a review mechanism no matter their length. Therefore, *Peterson*'s holding concerning a fifty-seven-year sentence is not binding in this case, and I would not extend its reasoning to Appellant's thirty-year sentence.

---

[5] *Horsley v. State*, 160 So. 3d 393 (Fla. 2015).

[6] *Peterson v. State*, 193 So. 3d 1034 (Fla. 5th DCA 2016).

15

Despite the majority's background discussion of *Henry*, *Horsley*, and *Peterson*, its opinion is really built upon a single sentence in *Kelsey*. Specifically, today's decision, and the decision in *Burrows*, centers on *Kelsey*'s statement "that all juvenile offenders whose sentences meet the standard defined by the Legislature in chapter 2014–220, a sentence longer than twenty years, are entitled to judicial review." *Kelsey*, 206 So. 3d at 8. To properly understand that single sentence, however, it cannot be read in isolation and must be considered in the context of the entire opinion.

In *Kelsey*, the supreme court only considered whether a juvenile offender, who had already been resentenced once because his original life sentences violated *Graham*, was entitled to a second resentencing and retroactive application of chapter 2014–220's review mechanism. *Kelsey*, 206 So. 3d at 6. Both the *Kelsey* court's holding and reasoning illustrate its narrow application. Indeed, in that case the court concluded that "[i]t would be antithetical to the precept of *Graham* and chapter 2014–220, Laws of Florida, to interpret them so narrowly as to exclude a juvenile offender who happens to have been resentenced before this Court issued *Henry*." *Id.* at 10. The *Kelsey* opinion also observed the defendant in that case "represent[ed] a narrow class of juvenile offenders, those resentenced from life to term-of-years sentences after *Graham*, for crimes committed before chapter 2014–220's . . . effective date." *Id.* at 10. If that were not enough, our supreme court again recognized *Kelsey*'s narrow application in *Johnson v. State*, when it explained that *Kelsey*'s holding merely applied "the reasoning in *Henry* to juveniles whose life sentences had been vacated pursuant to *Graham*, but who had not been resentenced under the new juvenile sentencing guidelines." 215 So. 3d 1237, 1239 (Fla. 2017). In sum, *Kelsey* did not hold that all juvenile sentences longer than

16

twenty years are unconstitutional unless they include chapter 2014–220's review mechanism, nor does *Kelsey* have any bearing on whether Appellant's thirty-year sentence in this case is unconstitutional.

Nevertheless, although I believe it was wrongly decided, I am bound by *Burrows*, and am now compelled to consider the remedy to which Appellant is entitled after demonstrating a violation of *Graham*. And although I cannot join all of the majority's reasoning, I agree with the majority's ultimate reading of sections 921.1402 and 775.087, which gives meaning to both statutes. That said, if the Legislature disagrees with our interpretation of these statutes, I believe it has every constitutional right to revise the statutes to clarify its intent.